Defendant-Appellant Glenn T. Winfield appeals his conviction for aggravated robbery with a firearm specification. Appellant argues that the trial court erred in refusing to delay the trial to allow appellant an opportunity to secure the appearance of a witness. Appellant also argues that the trial court erred in admitting certain hearsay testimony. Appellant further argues that his conviction is against the manifest weight of the evidence. Finally, appellant argues that the trial court erred in refusing to instruct the jury on the lesser-included offenses of robbery and theft. We find no merit to appellant's arguments and affirm the judgment of the court below.
 STATEMENT OF THE CASE
On March 27, 1998, the Ross County Grand Jury indicted appellant on one count of aggravated robbery, in violation of R.C. 2911.01, a first-degree felony. The indictment contained a specification that the appellant used a firearm in the commission of the offense. Appellant pled not guilty to the charge contained in the indictment. The case was tried to a jury in the Ross County Court of Common Pleas beginning on July 29, 1998.
At trial, Leroy Brown and Skyland Cousins testified that, in the early evening of March 22, 1998, appellant, accompanied by Brown, Cousins, and Jasper Sewards, drove to a home on Blackwater Road in Ross County. Appellant and Sewards entered this home and remained there for approximately fifteen minutes, while Brown and Cousins remained in the car. Sewards returned to the car first, and appellant returned shortly thereafter. Brown and Cousins both testified that, when Sewards returned to the car, he stated that appellant had just robbed the people in the house.
Rebecca Wrightsel, the owner of the home, testified that she and her boyfriend, Randall Blevins, were watching television in their home on the night of March 22, 1998. At approximately 8:00 p.m., appellant and Sewards came to the door. Appellant told Blevins that he was a friend of Wrightsel's, and asked to use the bathroom. Appellant came out of the bathroom holding a gun. He sat down in a chair in front of the couch, and told Wrightsel and Blevins that he wanted all of their money. Wrightsel testified that appellant removed the ammunition clip from the gun and placed it in the couch next to Blevins, although he told them that there was still a bullet in the chamber.
Mark Delp, a friend of Wrightsel, entered the house and appellant pointed the gun at him and demanded his money. Delp offered his wallet to appellant. However, appellant said that he did not want to touch the wallet and told Delp to take the money out. Delp removed twelve dollars and placed it on a nearby table.
Wrightsel further testified that, at this point, appellant asked Blevins to go to the back bedroom with him, so the two could talk. Blevins stated that he did not want to go with appellant so long as appellant had the gun. Appellant then gave the gun to Sewards and told him to shoot Wrightsel or Delp if either of them tried to leave the house or use the telephone.
Wrightsel testified that she asked Sewards if she could go to the kitchen to get a bottle for her baby. Wrightsel went to the kitchen, then walked to the back bedroom where appellant and Blevins were talking. Although the bedroom door was cracked open, Wrightsel testified that she could not tell what Blevins and appellant were talking about. Sewards appeared to be preoccupied with looking through a filing cabinet, so Wrightsel went out the back door and ran to her father's house to call the police.
Randall Blevins' testimony was substantially similar to Wrightsel's. However, Blevins specifically testified that appellant loaded a round into the chamber of the gun before he removed the clip. Blevins also testified that appellant made him go through the closets and drawers in the back bedroom looking for money. While Blevins and appellant were in the bedroom, Blevins noticed Wrightsel look through the bedroom door and he heard the back door to the house open. Sewards then came into the bedroom and told appellant that Wrightsel had just left the house. Sewards ran out the back door, while appellant went out the front door, leaving the ammunition clip to his gun behind. Blevins picked up the clip and noticed that it contained real bullets. Appellant then returned to the house and took the clip from Blevins.
Mark Delp's testimony was also similar to that of Wrightsel and Blevins. Delp testified that appellant met him at the front door of the house with the gun and ordered him to come inside and sit down. Appellant then demanded Delp's money and Delp offered to hand over his wallet. Appellant refused to take the wallet and, instead, ordered Delp to take out the money and place it on the table. Delp testified that he followed appellant's directions "[b]ecause I figured twelve dollars isn't worth what a gun could do to me."
Detective Tony Wheaton of the Ross County Sheriff's Department testified, in part, as a firearms expert about the workings of semi-automatic handguns. Detective Wheaton testified that such a handgun is loaded by placing an ammunition clip into the pistol grip' and then pulling back the slide to transfer a round from the clip into the chamber of the gun. At that point, even if someone were to remove the clip, the gun would still have one round in the chamber and be ready to fire.
During cross-examination of Detective Wheaton, appellant attempted to elicit testimony concerning alleged inconsistencies between oral statements that Wrightsel and Blevins had made to Sergeant John Bost and the taped statements that they made to Detective Wheaton. The trial court permitted appellant to question Detective Wheaton as to whether or not he had reviewed the prior statements of Wrightsel and Blevins with them before trial. However, the trial court prevented appellant from introducing any specific statements, or alleged inconsistencies in the statements, into evidence. The trial court also prevented appellant from asking Detective Wheaton why Sergeant Bost had not appeared in court.
Appellant took the stand in his own defense, and testified that on March 21, 1998, the night before the robbery, he and Joe Allegree had purchased LSD from Wrightsel. Early the following afternoon, appellant ingested the drugs, then went to visit with friends while he was "tripping." Appellant watched a basketball game with one of his friends, then went to pick up his handgun from a man who was cleaning it. Appellant testified that he intended to take the gun home, but that he became distracted and forgot to do so.
When appellant met with Brown, Cousins, and Sewards, he told them about the LSD that he had taken. The four of them agreed to drive out to purchase more drugs from Wrightsel. According to appellant, Wrightsel and Blevins claimed that they did not have any more LSD, then asked appellant if he and Sewards had any cocaine. Appellant testified that he asked to use the bathroom, and that the gun fell out of his waistband as he was coming back out of the bathroom. He sat down and began pressing Wrightsel and Blevins about the LSD, asking them if they had a private supply that he could buy from them. Appellant claimed that he took the clip out of the gun and gave the gun to Sewards because Wrightsel and Blevins appeared frightened when they saw the weapon. Appellant denied threatening anyone with the gun, or demanding money from anyone. He claimed that Wrightsel and Blevins had reported the incident as a robbery, because Sewards had stolen some marijuana from the house while the two of them were there.
The day after the robbery, appellant's mother told him that she heard on the radio that the police were looking for him. Appellant testified that he immediately went to the Ross County Law Enforcement Complex to find out if there was an outstanding warrant for his arrest. When appellant arrived at the Law Enforcement Complex, he was placed under arrest and held in the county jail. Appellant testified that a deputy asked him if he wanted to make a statement, but he refused. Appellant specifically denied having any discussion with Detective Wheaton about the gun.
Appellee recalled Detective Wheaton as a rebuttal witness. Detective Wheaton testified, over appellant's objection, that he talked to appellant in a holding cell at the Ross County Jail. Detective Wheaton served appellant with an arrest warrant for aggravated robbery, then inquired of appellant whether he would be willing to answer some questions after the booking procedures were completed. At that point, appellant stated, "You don't have the gun. You can't prove anything. We didn't take anything."
On July 30, 1998, the jury found appellant guilty of aggravated robbery with the firearm specification, as charged in the indictment. The trial court sentenced appellant to seven years in prison for the aggravated robbery. In addition, the trial court imposed a mandatory three-year prison term for the firearm specification. Appellant filed a timely notice of appeal and presents four assignments of error for our review.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED IN REFUSING TO PERMIT DEFENDANT TO IMPEACH STATE WITNESSES THROUGH TESTIMONY DEMONSTRATING PRIOR INCONSISTENT STATEMENTS OF THE WITNESSES.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED IN THE ADMISSION OF TESTIMONY AT TRIAL.
ASSIGNMENT OF ERROR NO. 3:
 APPELLANT'S CONVICTION IS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE AND MUST BE OVERTURNED.
ASSIGNMENT OF ERROR NO. 4:
 THE TRIAL COURT ERRED IN REFUSING TO SUBMIT INCLUDED OFFENSE INSTRUCTION TO THE JURY.
 OPINION I.
In his First Assignment of Error, appellant argues that the trial court erred by refusing to allow him to impeach several prosecution witnesses through prior inconsistent statements. Appellant contends that Wrightsel and Blevins gave statements to Sergeant John Bost of the Ross County Sheriff's Office, which were contradictory to the testimony that they gave at trial. Appellant attempted to call Sergeant Bost as a witness to testify about the allegedly inconsistent statements. Appellee objected based on appellant's failure to provide a witness list during discovery. The trial court determined that appellant was entitled to call Sergeant Bost to testify. However, the court refused to grant appellant a continuance to secure Sergeant Bost's attendance at trial.
A party's failure to comply with a discovery order from the trial court may result in imposition of sanctions, including exclusion of witnesses and other evidence at trial. Crim.R. 16 (E). The decision to impose sanctions for a discovery violation is committed to the sound discretion of the trial court. State v. Montes (1993), 92 Ohio App.3d 539,636 N.E.2d 378. When imposing a sanction, however, the trial court should inquire into the reason for the discovery violation and impose the least severe sanction that is consistent with the purposes of the discovery rules. Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138.
In the instant case, appellant provided no discovery to appellee despite an order from the trial court directing him to do so. Appellant argues that his failure to provide a witness list was justified by appellee's own discovery practices. Appellee informed the trial court that the normal practice of the Ross County Prosecutor's Office is not to answer specific discovery requests, but rather to open its case file for independent examination by defense counsel. Appellee then reserves the right to call as a witness any individual identified in its file. Appellant argues that without a witness list from appellee, it was impossible for him to anticipate what witnesses he might need to call in his defense. In addition, appellant argues that he reasonably expected Sergeant Bost to be available at trial because he had been subpoenaed by appellee. Appellant agrees that the trial court properly ruled that appellant could call Sergeant Bost to testify. However, according to appellant, the trial court effectively negated this ruling, and abused its discretion, when it refused to grant even a brief continuance to allow appellant to secure Sergeant Bost's attendance.
Appellee, on the other hand, argues that the trial court properly imposed the least severe sanction that it could for appellant's discovery violation. Appellee characterizes this as a defense tactic that failed. Appellant apparently attempted to conceal his trial strategy by refusing to provide a witness list to appellee, instead relying upon appellee to subpoena certain key witnesses necessary to the defense. Appellee concedes that its policy of open-file discovery might entitle appellant to more latitude if appellant had provided any discovery at all. Under the circumstances, however, appellee argues that the trial court acted properly when it decided to permit appellant to call Sergeant Bost if he was available, but then refused to delay the trial for appellant to secure Sergeant Bost's attendance in court.
The decision to grant or deny a continuance is another matter that is left to the sound discretion of the trial court. State v. Landrum
(1990), 53 Ohio St.3d 107, 559 N.E.2d 710. In exercising that discretion, the trial court should consider "the length of delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." Id. In addition, the Supreme Court of Ohio has held that a trial court may deny a continuance that is requested as part of counsel's tactical design. Id. citing State v. Unger (1981), 67 Ohio St.2d 65,423 N.E.2d 1078.
In the instant case, we find that the trial court did not abuse its discretion by refusing appellant's request for a continuance. Appellant provided no discovery at all in the instant case, instead choosing to rely on appellee to subpoena witnesses. Also, during the first day of trial, appellant clearly indicated his intention to call Sergeant Bost to testify in his defense case. However, appellant made no attempt to issue his own subpoena to Sergeant Bost until just before trial resumed the following morning. Given appellant's failure to provide discovery, as well as his lack of diligence in attempting to secure Sergeant Bost's attendance, we find no abuse of discretion by the trial court in refusing to grant appellant's request for a continuance to secure this witness' attendance.
Appellant's First Assignment of Error is OVERRULED.
 II.
In his Second Assignment of Error, appellant argues that the trial court erred in admitting certain hearsay testimony. Appellee attempted to elicit testimony from both Brown and Cousins about statements that Sewards allegedly made after the robbery. Sewards returned to the car before appellant and allegedly said, "Tronnie [appellant] had just robbed them." The trial court overruled appellant's objection to Brown's testimony based on appellee's assertion that Brown would further testify that appellant was in the car at the time of Sewards' statement, and that appellant responded by saying "yes" and laughing. Appellee withdrew the original question and attempted to establish that appellant was in the car when Sewards told Brown and Cousins about the robbery. Brown, however, testified that appellant had not yet returned to the car, whereupon appellee abandoned this line of questioning.
Cousins also testified that Sewards returned to the car first and said that appellant had just robbed the people in the house. The trial court sustained appellant's objection to Cousins' testimony. As with Brown's testimony, however, the jury had already heard Cousins repeat Sewards' statement. Appellant argues that the trial court should have sustained his objection to Brown's testimony and, in any event, he was prejudiced by the fact that both Brown and Cousins repeated Sewards' statement.
The trial court's initial ruling on Brown's testimony was correct, because it was based on appellee's assertion that Brown would further establish that appellant was in the car when Sewards made his statement about the robbery. Appellee failed to establish appellant's presence in the car, but the original question to Brown about Sewards' statement about the robbery was withdrawn. Since neither Brown nor Cousins testified that appellant was in the car at the time of Sewards' statement, the trial court properly sustained appellant's objection to Cousins' testimony. Although the jury heard both of these answers, appellant failed to request any instruction for the jury to disregard the testimony. Therefore, we find no merit to appellant's argument.
Appellant also argues that the trial court erred in permitting Detective Wheaton to testify about statements appellant made while in custody. Detective Wheaton, a rebuttal witness for appellee, testified that, while appellant was in custody, he stated, "You don't have the gun. We didn't take anything. You can't prove it." Detective Wheaton also testified that appellant made this statement before being read hisMiranda rights. The trial court overruled appellant's objection to this testimony.
A criminal defendant who testifies in his own defense may be impeached by a statement taken in violation of Miranda, so long as there is no indication that the defendant's statement was coerced or involuntary.Harris v. New York (1971), 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643. In the instant case, appellant took the witness stand in his own defense and testified that he did not make any statement while in custody. Moreover, appellant specifically denied talking to Detective Wheaton about the gun. Detective Wheaton's testimony, that appellant did, in fact, make a statement, in which he stated, "You don't have the gun," was admissible to impeach appellant's testimony. There is nothing in the record to indicate that appellant's statement to Detective Wheaton was in any way coerced or involuntary. Therefore, the trial court could have properly admitted this testimony of Detective Wheaton, even if taken in violation of Miranda, because it was admitted in rebuttal, to impeach appellant's own testimony, denying that he made any statement to Detective Wheaton. Once the appellant opened the door on this issue by his own testimony, such rebuttal testimony was clearly proper.
In addition, no motion to suppress these statements of appellant was filed prior to trial, in accordance with Crim.R. 12. This rule states, in pertinent part:
(B) Pretrial motions:
The following must be raised before trial:
* * *
 (3) Motions to suppress evidence, including but not limited to, statements and identification testimony, on the ground it was illegally obtained.
Crim.R. 12 (B)(3).
No motion to suppress these statements of appellant, allegedly made to Detective Wheaton in violation of Miranda, appears in the record. Any objection to the admission of these statements into evidence was, therefore, waived by appellant.
 Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver.
Crim.R. 12 (G).
There appear to be a number of bases upon which the admission of the testimony of Detective Wheaton by the trial court, regarding these inculpatory statements, allegedly made to him by appellant, was proper. Accordingly, we find the admission of this testimony of the Detective into evidence by the trial court to be correct and proper.
Finally, appellant argues that the trial court erred in restricting defense counsel from commenting on appellee's failure to call a witness, while not applying the same restriction to appellee. During closing arguments, the trial court permitted appellee to comment on the fact that Allegree, the person that appellant claimed went with him to purchase LSD from Wrightsel the night before the robbery, did not testify. However, the trial court prevented defense counsel from cross-examining Detective Wheaton on the fact that appellee did not call Sergeant Bost to testify. Appellant argues that this was an unfair double standard that prejudiced his defense.
Crim.R. 16 (C)(3) provides, "The fact that a witness' name is on a list furnished under subsection (C)(l)(c), and that the witness is not called shall not be commented upon at the trial." We have previously held that Crim.R. 16 (C)(3) does not apply when a witness is not named on a discovery list or when no discovery list is provided. Jackson v. Howell
(1993), 86 Ohio App.3d 497, 621 N.E.2d 573. In the instant case, appellee's comment on appellant's failure to call Allegree was proper because appellant failed to produce a witness list or, indeed, any discovery at all, despite an order to do so by the trial court.
The issue raised by appellant's argument is whether the trial court should have permitted him to comment on appellee's failure to call Sergeant Bost to testify. It appears from the record that appellee did not provide a witness list pursuant to Crim.R. 16, but rather, relied on its practice of open-file discovery as a substitute for formal discovery procedures. We have some concerns regarding appellee's practice of open-file discovery serving as a substitute for a formal witness list for purposes of Crim.R. 16 (C)(3) and our holding in Howell[1] However, we need not determine whether Howell would permit appellant to comment on Sergeant Bost's absence from the trial, because we disagree with appellant's contention that the trial court applied a double standard to the parties.
When appellant attempted to cross-examine Detective Wheaton on the absence of Sergeant Bost, appellee had not yet rested its case. While Crim.R. 16 (C)(3) and our holding in Howell are not limited to closing arguments, common sense would dictate that appellant could not comment on appellee's failure to call a witness before appellee had concluded its case-in-chief. During closing arguments, appellant did not attempt to comment on appellee's failure to call Sergeant Bost to testify.
Even assuming, arguendo, that the trial court improperly restricted appellant from commenting on Sergeant Bost's absence at trial, we find that any such error was harmless beyond a reasonable doubt. Appellant attempted to impeach the credibility of Wrightsel and Blevins by alluding to statements they made to Sergeant Bost shortly after the robbery that allegedly conflicted with their trial testimony. However, appellant was not able to impeach Delp, who corroborated significant aspects of the testimony of Wrightsel and Blevins.
We find that appellant's arguments are without merit, and his Second Assignment of Error is OVERRULED.
 III.
In his Third Assignment of Error, appellant argues that his convictions for both aggravated robbery and the firearm specification are against the manifest weight of the evidence.
In determining whether a judgment is against the manifest weight of the evidence, an appellate court must consider all of the evidence, judge credibility of witnesses, and determine for itself what inferences to draw. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541,546-47. The court essentially acts as an extra juror to determine if the trier of fact reached the right verdict based on all of the evidence.Id. However, the court's review must be tempered by the understanding that the trier of fact is in the best position to judge the credibility of witnesses and to weigh the evidence. A judgment should be reversed as against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Id. quotingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717,720-721.
With respect to the firearm specification, appellant argues that, since the gun was not admitted into evidence, there was no evidence that the gun was operable. Appellant further contends that his testimony that he removed the clip from the gun was uncontroverted. Appellant argues that the jury was permitted to infer from the fact that appellant had a gun that the gun was loaded and operable. Appellant claims this is an inference resting upon an inference, and is insufficient to support his conviction on this count.
A conviction on a firearm specification requires proof that the defendant used a firearm that "was operable or readily could have been rendered operable at the time of the offense." State v. Gaines (1989),46 Ohio St.3d 65, 545 N.E.2d 68, syllabus. The Gaines court compared the elements of aggravated robbery under R.C. 2911.01 (A)(l) to those of the firearm specification under former R.C.2929.71.[2] The court noted that aggravated robbery simply requires proof of a deadly weapon, while the firearm specification statute specifically requires a firearm. Furthermore, the Revised Code defines the term "firearm" as a deadly weapon "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11 (B). The court reasoned that, if the General Assembly had intended for "firearm" to have the same meaning as "deadly weapon," then there would have been no reason to define the two terms separately. Gaines,46 Ohio St.3d at 67, 545 N.E.2d at 70.
The Gaines court held that, to support a charge containing a firearm specification, it is not necessary to introduce a gun into evidence, so long as there is some evidence from which the jury might reasonably infer that the defendant used a gun that was operable. The court noted that evidence of a shot fired, the smell of gunpowder, bullets, or bullet holes could be sufficient. Id. at 69, 545 N.E.2d at 71-72. In addition, the Supreme Court of Ohio has expressly modified Gaines, holding that operability of a firearm may be inferred from all of the circumstances surrounding the crime. State v. Murphy (1990), 49 Ohio St.3d 206,551 N.E.2d 932, syllabus.
Considering all of the circumstances surrounding the robbery in the instant case, we find that the evidence was sufficient for the jury to conclude that appellant's gun was an operable firearm. Appellant testified that, on the day of the robbery, he retrieved his handgun from a man who was cleaning it for him, a fact from which one could reasonably infer that the gun was operable. In addition, Blevins testified that he handled the clip and observed that it contained real bullets. While appellant argues that the gun was not operable because it was unloaded, we note that the definition of "firearm" under R.C 2923.11 (B) includes unloaded firearms. Furthermore, appellant had access to the clip, so he could have readily loaded the gun and made it operable, once again satisfying the Gaines test.
Appellant further claims that his conviction for aggravated robbery is based on an inference resting upon an inference. Since he did not actually take anything from the house, appellant argues that there is no evidence that he committed or attempted to commit a theft offense. Appellee did not introduce a gun into evidence, there is no evidence of forced entry, and there is no evidence that appellant took anything; therefore, appellant argues that his conviction cannot stand.
Under R.C. 2911.01, a conviction for aggravated robbery requires that the defendant commit or attempt to commit a theft offense. Attempt requires that the defendant purposely or knowingly "engage in conduct that, if successful, would constitute the offense."
R.C. 2923.01 (A). In the instant case, Wrightsel, Blevins, and Delp all testified that appellant pointed a gun at them and demanded their money. This is conduct that, if successful, would result in the commission of a theft offense. Furthermore, Blevins and Delp testified that Delp placed twelve dollars on a table after appellant demanded money from him, and that appellant and Sewards quickly fled from the house after Wrightsel ran out the back door. Thus, it appears that the only reason appellant did not complete the theft was his hasty retreat from the house after Wrightsel had managed to escape.
Appellee presented substantial evidence to establish all of the elements of aggravated robbery, and to establish that appellant used an operable firearm in the commission of the robbery. The credibility of the witnesses was of paramount importance in the instant case. The jury heard the testimony of Wrightsel, Blevins, and Delp on the one hand, and appellant's competing version of the facts on the other. Having had the opportunity to view all of the witnesses and judge their credibility, the jury believed the testimony of the victims in this case. We find nothing in the record before us that leads us to second-guess the jury's verdict.
Appellant's Third Assignment of Error is OVERRULED.
 IV.
In his Fourth Assignment of Error, appellant argues that the trial court erred in refusing to instruct the jury on the lesser-included offenses of robbery and theft. An offense is a lesser included offense of another if "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus. As appellee argues, a criminal defendant is not entitled to an instruction on a lesser-included offense unless the evidence would reasonably support both an acquittal on the greater offense and a conviction on the lesser offense. State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus.
In the instant case, if the jury had acquitted appellant of the aggravated robbery charge, then there would have been no basis to support a conviction for either robbery or theft. Both robbery[3] and aggravated robbery[4] require that the offender have a deadly weapon under his control while committing or attempting to commit a theft offense. R.C. 2911.02 and 2911.01. The difference between the two crimes is that aggravated robbery also requires that the offender either display the weapon, brandish it, indicate that the offender possesses it, or use it."
Appellant's own testimony established not only that he had a deadly weapon under his control while he was in the house of Wrightsel and Blevins, but also that he displayed the weapon. The issue for the jury to determine was whether appellant was engaged in an attempted theft[5], or, as asserted by appellant, was engaged in a drug transaction. If the jury believed that appellant went to see Wrightsel and Blevins to purchase LSD and not to commit a theft, then there was no basis for a conviction for aggravated robbery, robbery, or theft. However, the jury obviously rejected appellant's testimony and believed Wrightsel, Blevins, and Delp, when they testified that appellant demanded their money at gunpoint. Appellant, in his own testimony, admitted that he had displayed a gun during the attempted theft, the element absent from either of the lesser offenses, but one required for aggravated robbery. So, once the jury had concluded that appellant's purpose was an attempt to commit a theft, the only reasonable verdict was for the offense of aggravated robbery, and not for the lesser offenses of robbery or theft. This being the case, we find that the trial court properly refused to instruct the jury on theft and robbery as lesser-included offenses.
Appellant's Fourth Assignment of Error is OVERRULED. The judgment of the Ross County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY.
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment and Opinion.
 Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error I, III, IV. Concurs in Judgment Only as to Assignment of Error II.
 _____________________ David T. Evans, Judge
[1] In actuality, Crim.R. 16 (B)(4) is the counterpart to Grim.R. 16 (C)(3) that applies to witnesses named by the prosecution. We refer to Crim.R. 16 (C)(3) throughout this discussion for purposes of clarity.
[2] The relevant provisions of former R.C. 2929.71 are now contained in R.C. 2929.14(D).
[3] Robbery is defined in R.C. 2911.02, which provides in relevant part:
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control;
[4] Aggravated robbery is defined in R.C. 2911.01, which provides in relevant part:
(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
[5] Theft is defined in R.C. 2913.02, which states in relevant part:
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
* * *
(4) By threat;
(5) By intimidation.