THE STATE OF OHIO, APPELLANT, *v.* GAINES, APPELLEE.

[Cite as State *v.* Gaines (1989), 46 Ohio St. 3d 65.]

(No. 88-323—Submitted March 8, 1989—Decided October 11, 1989.)

*Lynn Alan Grimshaw,* prosecuting attorney, and *R. Randolph Rumble,* for appellant.

*Gloria Eyerly,* for appellee.

*Randall M. Dana, Gregory L. Ayers* and *Barbara L. Farnbacher,* urging affirmance for *amicus curiae,* Ohio Public Defender Commission.

*Tataru, Wallace & Warner* and *Roger Warner,* urging affirmance for *amicus curiae,* Ohio Association of Criminal Defense Lawyers.

SWEENEY, J. The sole issue presented for review in the instant appeal concerns the evidentiary basis necessary to require additional incarceration under the firearm specification statute. Defendant-appellee was convicted of aggravated robbery in violation of R.C. 2911.01. This section provides in relevant part:

"(A)  No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1)  *Have a deadly weapon* or dangerous ordnance, as defined in section 2923.11 of the Revised Code, *on or about his person or under his control;* "* * *

"(B)  Whoever violates this section is guilty of aggravated robbery, *an aggravated felony of the first degree."* (Emphasis added.)

"Deadly weapon" is defined in R.C. 2923.11(A) as follows:

" 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

In addition to his conviction for aggravated robbery, the jury further concluded that appellee was in possession of a firearm during the commission of the felony. The trial court thereafter imposed an additional term of three years' actual incarceration pursuant to R.C. 2929.71. This section provides in pertinent part:

"(A)  The court shall impose a term of actual incarceration of three years in addition to imposing a life sentence pursuant to section 2907.02, 2907.12, or 2929.02 of the Revised Code or an indefinite term of imprisonment pursuant to section 2929.11 of the Revised Code, if both of the following apply:

"(1)  The offender is convicted of, or pleads guilty to, any felony other than a violation of section 2923.12 of the Revised Code;

"(2) The offender is also convicted of, or pleads guilty to, a specification charging him with having a firearm on or about his person or under his control while committing the felony. The three-year term of actual incarceration imposed pursuant to this section shall be served consecutively with, or prior to, the life sentence or the indefinite term of imprisonment.

"* * *

"(D) As used in this section:

"(1) 'Firearm' has the same meaning as in section 2923.11 of the Revised Code[.]"

R.C. 2923.11(B) defines "firearm" as follows:

" 'Firearm' means any *deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.* 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." (Emphasis added.)

It is the contention of the state that the terms "deadly weapon" and "firearm" are synonymous as applied to guns, and that evidence sufficient to support the conclusion that the accused was in possession of a gun that was a deadly weapon pursuant to R.C. 2911.01(A)(1) is also sufficient to establish that the accused was in possession of a firearm pursuant to R.C. 2929.71(A). This view is not supported by the statutory language.

As an initial matter, R.C. 2923.11 (B) defines "firearm" as a deadly weapon capable of expelling a projectile. If the General Assembly had intended that the two terms be synonymous there would have been no need to further define "firearm" in R.C. 2923.11(B) with respect to its operability. Moreover, there would be no need to separately define "deadly weapon" and "firearm" in R.C. 2923.11(A) and (B), respectively.

Secondly, if the requirements for the firearm specification contained in R.C. 2929.71 were satisfied merely by proof sufficient to support a conviction for aggravated robbery under R.C. 2911.01(A)(1), the firearm specification statute would be superfluous. If, indeed, the General Assembly intended to impose a three-year mandatory term of imprisonment for possession of a deadly weapon during the commission of a felony, it could have so provided within the framework of R.C. 2911.01(A)(1).[1]

The state relies upon *State* v. *Vondenberg* (1980), 61 Ohio St. 2d 285, 15 O.O. 3d 349, 401 N.E. 2d 437, to support its contention. However, *Vondenberg* is inapposite to the issue involved in this appeal. The syllabus to *Vondenberg* provides as follows:

---

[1] In support of its view that R.C. 2929.71 should be interpreted in a manner inconsistent with its plain language, the dissent cites *People, ex rel. Wood,* v. *Lacombe* (1885), 99 N.Y. 43, 49, 1 N.E. 599, 600, for the proposition that strict adherence to the words employed by the Ohio General Assembly may be discarded in order to render criminal what is clearly not encompassed within the terms of the statute. However, rather than placing reliance upon the language of a decision rendered in the context of a civil proceeding by a court of another jurisdiction, we find it more appropriate to be guided by R.C. 2901.04(A) in deriving legislative intent. R.C. 2901.04(A) provides as follows:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." See, also, *State* v. *Merriweather* (1980), 64 Ohio St. 2d 57, 18 O.O. 3d 259, 413 N.E. 2d 790.

This is the standard which governs our decision today.

*"For purposes of establishing the crime of aggravated robbery,* a jury is entitled to draw all the reasonable inferences from the evidence presented that the robbery was committed with the use of a gun, and it is not necessary that the prosecution prove that the gun was capable of firing a projectile." (Emphasis added.)

Thus, *Vondenberg* was concerned only with the evidence necessary to establish the crime of aggravated robbery. That issue is not before this court. In point of fact, the firearm specification statute (effective July 1, 1983) was not in existence at the time *Vondenberg* was decided.

Consequently, commission of a felony while in the possession of an "instrument * * * capable of inflicting death, and designed or specially adapted for use as a weapon" is not synonymous with the commission of a felony while in the possession of a "deadly weapon capable of expelling or propelling * * * projectiles by the action of an explosive or combustible propellant." Examples of these distinctions are numerous. One may use a BB gun (*State* v. *Ewing* [Mar. 27, 1980], Cuyahoga App. No. 41080, unreported) or a pellet gun (*State* v. *Scales* [Sept. 27, 1979], Cuyahoga App. No. 39763, unreported) in the commission of a theft offense and be found guilty of aggravated robbery. Nevertheless, on identical facts one would not be subject to the three-year firearm specification since such weapons, although considered deadly weapons under R.C. 2923.11(B), do not employ an "explosive or combustible propellant" so as to come within the purview of R.C. 2929.71(A) by virtue of the definition contained in R.C. 2923.11(B). *State* v. *Gray* (1984), 20 Ohio App. 3d 318, 20 OBR 420, 485 N.E. 2d 159. Conversely, where the weapon used is inoperable, it may nevertheless be con-

sidered a deadly weapon even though it is not a firearm. Accordingly, convictions for aggravated robbery have been upheld even where a toy gun or an inoperable gun was used in the commission of the theft offense since such devices could be used as bludgeons and were therefore "capable of inflicting death" pursuant to R.C. 2911.01(A)(1) and 2923.11(A). See *State* v. *Hicks* (1984), 14 Ohio App. 3d 25, 14 OBR 29, 469 N.E. 2d 992; *State* v. *Marshall* (1978), 61 Ohio App. 2d 84, 15 O.O. 3d 93, 399 N.E. 2d 112. Thus, proof of the firearm specification involves evidence in addition to that required to establish aggravated robbery.

While the United States Supreme Court has not squarely addressed the issue, in *United States* v. *Brewer* (C.A. 6, 1988), 841 F. 2d 667, 668, the Sixth Circuit Court of Appeals made the following observation concerning the decision of the Supreme Court in *McMillan* v. *Pennsylvania* (1986), 477 U.S. 79:

"[I]t appears that all nine members of the Court would require notice in the indictment and proof beyond a reasonable doubt *of a fact* that increases the punishment beyond the maximum set by the legislature for the elements of the offense." (Emphasis added.)

Inasmuch as R.C. 2929.71(A) increases the penalty for aggravated robbery by three years where a firearm is used in its commission, the firearm specification must be proven beyond a reasonable doubt.

It is therefore our conclusion that R.C. 2923.11(B) and 2929.71(A) require that, prior to imposition of an additional term of three years' actual incarceration for possession of a firearm during the commission of a felony, the state must prove beyond a reasonable doubt that the firearm was operable or

could readily have been rendered operable at the time of the offense.

In the case at bar, the evidence adduced relative to the character of the weapon used is not sufficient to warrant conviction under the firearm specification. Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability. In the present case, there was testimony concerning the appearance of the gun and the witnesses' subjective belief that it was operable. However, these lay witnesses could have drawn the same conclusion from the appearance of a toy gun. Absent any evidence tending to establish that the gun was operable, the firearm specification was not proved beyond a reasonable doubt. The evidence adduced was as consistent with facts insufficient to establish the firearm specification (*e.g.,* a toy gun) as it was with facts sufficient to establish the specification (a firearm). Under such circumstances, the state has failed to satisfy its burden of proof. See *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, 66 O.O. 2d 351, 309 N.E. 2d 897.

The judgment of the court of appeals is therefore affirmed and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

*Judgment affirmed
and cause remanded.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

HOLMES, DOUGLAS and RESNICK, JJ., separately dissent.

HOLMES, J., dissenting. I concur, in the main, with the thoughts expressed by Justice Resnick in her dissent. R.C. 2929.71 is a narrowly drawn statute designed to deter the use of guns by criminals. Reference within this statute to the definition of "firearm" contained in R.C. 2923.11(B) was necessary to distinguish other deadly weapons from the uniquely dangerous nature of hand-carried ballistics. The legislature did not intend to deter only the *firing* of firearms, but also the *use* of such firearms during the commission of a felony. In this respect, our unanimous decision in *State* v. *Vondenberg* (1980), 61 Ohio St. 2d 285, 288, 15 O.O. 3d 349, 350-351, 401 N.E. 2d 437, 439, is anything but inapposite:

" '* * * "To require the State to prove that the instrumentalities used by the robbers in accomplishing a robbery, such as revolvers * * * which ordinarily are so used only when loaded and capable of dealing out injury and death, are in fact what they purport to be from the very nature of the use made of them by the robbers, would defeat the object and purpose of * * * [the statute] because it is quite unusual to apprehend the robbers in the act and before they have had an opportunity to carry away with them from the scene of the crime the weapons used by them to effect its perpetration." *State* v. *Kowertz* (1930), 324 Mo. 748, 754, 25 S.W. 2d 113.' " Quoting *State* v. *Meek* (1978), 53 Ohio St. 2d 35, 38-39, 7 O.O. 3d 121, 123, 372 N.E. 2d 341, 343-344.

Every firearm is, by definition, a deadly weapon. Indeed, this court in *Vondenberg, supra,* utilized the definition of "firearm" contained in R.C. 2923.11(B) in its analysis of the term "deadly weapon" under the facts of that case. *Id.* at 288, 15 O.O. 3d at 351, 401 N.E. 2d at 439. Thus, the same degree of proof necessary to establish the presence of a "deadly weapon," as

set forth in *Vondenberg*,[2] must be sufficient to establish the presence of a firearm for purposes of the enhancement statute, R.C. 2929.71, where such deadly weapon is used by the defendant as an operable gun and is perceived by the victims as such. This degree of proof, as stated by Justice Resnick, is that necessary "to establish from the totality of the circumstances, including reasonable inferences from the evidence presented, that the defendant had a firearm on or about his person or under his control." Accord *State* v. *Jordan* (1987), 31 Ohio App. 3d 187, 31 OBR 353, 509 N.E. 2d 1278; *State* v. *Vasquez* (1984), 18 Ohio App. 3d 92, 18 OBR 455, 481 N.E. 2d 640; *State* v. *Rockett* (Dec. 26, 1984), Hamilton App. No. C-840073, unreported.

The majority observes that not all "deadly weapons" are "firearms," citing the examples of BB guns, pellet guns, and toy guns or inoperable guns which may be used as bludgeons. Such distinctions do not serve to raise the state's burden of proof as to the presence of a firearm, but rather, as a reasonable consequence of the permissible *Vondenberg* inferences, to shift the burden to the defendant to prove by a preponderance of the evidence his affirmative defense that the weapon could not "readily be rendered operable," or does not employ an "explosive or combustible propellant." Accord *State* v. *Rockett*, *supra*. Thus, as is typically done in the cases such as those cited by the majority on this point, where the state has presented sufficient evidence, including all permissible inferences therefrom, that the defendant had a firearm on or about his person or under his control during the commission of a felony, the burden of establishing an affirmative defense by a preponderance of the evidence should shift to the defendant, who must establish that the weapon used in the commission of a felony was not a "firearm" as defined in R.C. 2923.11 (B).

By enacting R.C. 2929.71, the General Assembly intended to caution criminals that their possession of a firearm while committing a felony would cost them three years of their lives in prison.[3] Following today's decision, however, such admonition holds true only in the event that the criminal is caught in the act or in the event that the criminal fires such weapon during the crime. Because I believe such a

---

[2] "* * * In determining this issue, we apply the general evidentiary rule that when direct evidence of a fact, in this instance the use of a deadly weapon, is not obtainable, proper inferences may be drawn from the presentation of other facts. Here, testimony was presented as to the use of a gun during the robbery which allowed the jury to make an inference that the defendant used a deadly weapon.

"Where there is credible evidence that there was a gun used in a robbery, and when that gun is not available for testing, it is not necessary for the state to prove that the gun could actually fire a projectile in order to sustain a conviction for aggravated robbery. A jury is permitted to infer the deadly nature of an instrument from the facts and circumstances of its use. The state should not be required to produce the weapon in order to secure a conviction for aggravated robbery. To do so would emasculate R.C. 2911.01, and reward those armed robbers who have the fortune to escape the scene of the crime, and the foresight to destroy or conceal the weapons before they are apprehended." *Vondenberg*, *supra*, at 288-289, 15 O.O. 3d at 351, 401 N.E. 2d at 439-440.

[3] Exemplary of this is the anti-crime placard distributed by the Governor's office to local police authorities following the enactment of this law. (Reproduced *infra*.)

result is contrary to the purpose and intent of the firearm penalty enhancement statute, R.C. 2929.71, I must respectfully dissent.

ALICE ROBIE RESNICK, J., dissenting. I must respectfully dissent because I believe the majority has misinterpreted the legislative purpose and intent of R.C. 2929.71.

The procedure to follow when interpreting a statute was well-stated many years ago in *People, ex rel. Wood, v. Lacombe* (1885), 99 N.Y. 43, 49, 1 N.E. 599, 600, and it remains true today. The court stated: "In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought with the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit [the object] and purpose of a statute which are to be regarded in its interpretation; and if they find fair expression in the statute, it should be so construed as to carry out the legislative intent, even though such construction is contrary to the literal meaning of some provisions of the statute."

With the foregoing in mind, at the time the statute in question was enacted there was a drastic rise in violent crimes involving the use of firearms, and therefore state legislatures throughout the country enacted statutes designed to curb violent crime. One of the major avenues utilized by state lawmakers was the adoption of enhancement statutes. The

basic premise of this type of law was to "enhance" the sentence of a defendant convicted of an enumerated felony who used or possessed a firearm in the perpetration of said crime. By enacting R.C. 2929.71 in 1983, Ohio joined the growing number of states seeking to deter the use of guns in the commission of violent crimes.

The majority correctly states that the sole issue before us in the present case is the sufficiency of evidence necessary to impose additional incarceration under the firearm specification statute. However, this provision of the Revised Code does not expressly require the state to prove that a firearm was operable at the time of the offense in order to invoke the enhancement aspect of the firearm specification. Rather, the statute merely requires the state to establish from the totality of the circumstances, including reasonable inferences from the evidence presented, that the defendant had a firearm on or about his person or under his control. Indeed, on its very face R.C. 2929.71 requires no more; the statute does not state that the gun must be displayed, discharged or used in the commission of a felony. There simply is no mention of the firearm's operability contained within this statute. In addition, the very definition of "firearm" under R.C. 2923.11(B) includes an unloaded firearm.

The Supreme Court of New Jersey was presented with the identical issue in *State* v. *Gantt* (1986), 101 N.J. 573, 503 A. 2d 849. Therein, the court framed the question before it as follows: "* * * We limited our grant of certification to the single issue of whether a firearm must be proven operable before * * * sentence may be imposed."[4] *Id.* at 578, 503 A. 2d at 851. The court held that the New Jersey

---

[4] The court went on to note that it was only addressing the relevance of operability in the context of sentencing. In this aspect the New Jersey statute (N.J.S.A. 2C:43)

statute providing for mandatory imprisonment for those who use or possess a firearm in the commission of an enumerated felony contemplated a firearm not in terms of the device's current operability, but in terms of its original design. For this reason, the Supreme Court of New Jersey concluded that the state need only prove that the weapon involved was a firearm, and the evidence "* * * requires neither proof nor a court finding that the weapon was operable. The court need be satisfied only that the device was originally designed to deliver a potentially-lethal projectile and hence 'real.' * * * In addition, we note in particular that an object's authentic design may be inferred from appearance or based on lay testimony, but in no case is it dependent upon empirical examination of the weapon." *Id.* at 589-590, 503 A. 2d at 857.

This ruling of the New Jersey Supreme Court is consistent with decisions from other jurisdictions as well. See, *e.g., State* v. *Millett* (Me. 1978), 392 A. 2d 521, 527-528 (jury warranted to find, on the basis of lay testimony describing instrument projecting from defendant's belt, that weapon was a real gun and it was not necessary for state to prove operability); *Benson* v. *State* (Wyo. 1982), 640 P. 2d 83, 86, certiorari denied (1982), 456 U.S. 1006 (absent defendant-appellant's introduction of evidence that the firearm was inoperable, it is not error to fail to instruct the jury that operability is an essential element in firearms-possession conviction); *People* v. *Brooks* (1984), 135 Mich. App. 193, 196-198, 353 N.W. 2d 118, 120-121 (operability of a firearm is irrelevant to the determination of guilt under a felony-firearm statute imposing two-year mandatory minimum sentences); *People* v. *Taylor* (1984), 151 Cal. App. 3d 432, 436-437, 199 Cal. Rptr. 6, 9-10 (proof of operability is not essential to conviction for firearms-possession offense or to imposition of enhanced sentence for felonies committed while armed); *State* v. *Hillis* (Mo. App. 1988), 748 S.W. 2d 694 (prosecution for armed criminal action did not require proof that gun used during robbery was operable).

It makes no sense when considering the legislative purpose in enacting R.C. 2929.71 that a higher degree of proof would be required than is required in the case of establishing the elements of aggravated robbery. We have held that to establish an aggravated robbery conviction, the jury may draw reasonable inferences from the evidence that the robbery was committed with the use of a gun, but that it was not necessary for the state to prove the gun was capable of firing a projectile, *i.e.,* was "operable." See *State* v. *Vondenberg* (1980), 61 Ohio St. 2d 285, 15 O.O. 3d 349, 401 N.E. 2d 437, syllabus. It is clear that while *Vondenberg* was concerned only with the evidence to support the crime of aggravated robbery, *Vondenberg* is instructive as to the issue before us, and not inapposite. There is no substantial reason for requiring a higher degree of proof of a firearm than we already have required for a conviction of aggravated robbery.

The reasoning found in *State* v. *Jordan* (1987), 31 Ohio App. 3d 187, 31 OBR 353, 509 N.E. 2d 1278, is persuasive wherein the court determined

---

parallels R.C. 2929.71, since neither statute creates a new offense, but rather enhances the sentence when a firearm is present. See *State* v. *Price* (1985), 24 Ohio App. 3d 186,

24 OBR 277, 493 N.E. 2d 1372; *State* v. *Loines* (1984), 20 Ohio App. 3d 69, 20 OBR 88, 484 N.E. 2d 727.

that if the record contains credible evidence that an instrument variously described as a toy, starter pistol, or blank gun was used in an aggravated robbery and the instrument was not available for testing, it was not necessary for the state to prove the instrument (handgun) could actually fire a projectile in order to convict for aggravated robbery and also establish the firearm specification. Further, the court held that inferences of the deadly nature of the instrument are permissible from the facts and circumstances of its use. The court held that the rationale of *Vondenberg* applies to the firearm specification with the same force as it applies to aggravated robbery.

Turning now to the facts of the present case, the state offered the testimony of three witnesses, all of whom testified they clearly saw appellee with a gun in his possession. The majority goes so far as to cite the pertinent testimony from two of the three witnesses, and still finds there was insufficient evidence to support the invocation of R.C. 2929.71. Based on the above case law, and the evidence in this case, I disagree with the decision reached by the majority as to the sufficiency of the evidence. The clear legislative purpose of the firearms-specification statute must be kept in mind, that being, to deter the use of guns in the commission of a felony, and to prevent the kind of violence that often attends the use of firearms in the perpetration of a felony. The definition of "firearm," as used in both R.C. 2929.71 and 2923.11(B), does not envision the instrument in terms of its operability, but rather its inherent and peculiar dangerousness. By holding that the state must prove a firearm's operability, the majority rewards the sophisticated criminal who disposes of the gun before being apprehended, so as to avoid the firearm specification. The realities of law enforcement simply do not often afford the fortuitous act of catching a felon "red-handed." This is rarely the case. In the majority of aggravated robbery cases the perpetrator is apprehended after the crime takes place and the gun is seldom recovered.

Furthermore, while the majority opinion concedes that the actual firearm need not always be introduced into evidence, it suggests circumstantial evidence, such as hearing gunshots, smelling gunpowder, or seeing bullet holes will suffice to establish operability. This is akin to requiring that the criminal actually fire the gun, and either miss, wound or kill an innocent victim, which is the exact harm the statute seeks to prevent. It is inconceivable that this was the General Assembly's intent when enacting R.C. 2929.71. The majority's decision today virtually renders the firearms-specification statute ineffective in Ohio. All that should be required under this statute is that the state prove from the totality of the circumstances, including reasonable inferences from the attendant facts and the testimony of lay witnesses, that a defendant had a firearm on or about his person or under his control. No greater proof should be required than what is necessary for an aggravated robbery conviction. Because the majority opinion effectively eliminates the application of the firearm specification's enhancement provisions in all cases except those where a criminal is in possession of the gun when apprehended or leaves evidence of the gun's operability at the scene by reason of having fired the weapon, I must respectfully dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

# USE IT TO ROB AND YOU ROB YOURSELF.

## Mandatory 8 years prison.
GOVERNOR'S OFFICE OF CRIMINAL JUSTICE SERVICES