OPINION
{¶ 1} Defendant-appellant Samuel Woods appeals the November 21, 2001 and December 5, 2001 Judgment Entries of the Stark County Court of Common Pleas, which convicted him of one count of aggravated robbery with a gun specification and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 7, 2001, the Stark County Grand Jury indicted appellant with one count of Aggravated Robbery, in violation of R.C.2911.01, with a firearm specification, in violation of R.C. 2941.145. Appellant pled not guilty to the charge and the matter proceeded to trial on November 15, 2001. At that time, the State presented three witnesses: Donald Miller, Ruster Barone, and John Leonard. Appellant presented no witnesses in his defense. The following evidence was adduced at trial.
 {¶ 3} Officer Donald Miller of the Canton City Police Department responded to a dispatch call indicating a burglary was in progress at an apartment on 6th Street, NW., in Canton, Ohio. When he arrived, he found John Leonard, the victim, with a cut and abrasion on his lip. Mr. Leonard told Officer Miller he had been robbed at gunpoint, and struck with a gun on the face and head. Mr. Leonard gave Officer Miller a description of the perpetrators as two black males, one approximately 18-21 years old and 6'2", 175 pounds. Mr. Leonard indicated that suspect had been wearing dark clothing. Mr. Leonard was unable to give Officer Miller much information with regard to the second suspect.
 {¶ 4} Officer Miller testified he checked on Mr. Leonard's girlfriend and child who were sleeping in an upstairs bedroom of the apartment. It appeared to Officer Miller these two had been asleep throughout the incident and the officer did not interview them.
 {¶ 5} Les Baroni, a detective with the Canton Police Department, testified the police department received a lead with the name of the suspect in this case. Therefore, Det. Baroni prepared a photo lineup and took the lineup to the victim's place of work. The victim immediately identified appellant as the individual who had robbed him and hit him with a gun.
 {¶ 6} John Leonard told the jury he heard a knock at his door in the early morning of July 25, 2001. When he answered the door, he found a person standing directly in front of him, pointing a gun at him, and another person off to the side, holding the screen door open. Mr. Leonard instinctively grabbed for the gun and the gunman pulled away slightly and told him not to touch the gun.
 {¶ 7} The gunman asked Mr. Leonard where the money was, and Mr. Leonard responded that he didn't have any money. Upon hearing this response, the individual struck Mr. Leonard with the gun, either in the face or on the head (Mr. Leonard could not remember which). Mr. Leonard testified he then told the gunman he had some money upstairs. Although both individuals followed Mr. Leonard up the steps, Mr. Leonard did not turn around to look at the second individual. Mr. Leonard found $182.00 in his bedroom and gave it to the man with the gun. After taking the money, the gunman struck Mr. Leonard with the gun again, and asked where the rest of the money was. When Mr. Leonard said he had no additional money, the two individuals went down the steps while Mr. Leonard stayed at the top of the steps. After ten to twenty seconds, Mr. Leonard heard his screen door open and then close. Mr. Leonard immediately called the police.
 {¶ 8} Several days following the incident, Mr. Leonard was on his front porch with a friend. As he and his friend talked, they saw two individuals ride past his home on bikes. Mr. Leonard recognized one of the individuals as the person who robbed him. Mr. Leonard's friend knew that individual's name to be Sam Bell. Mr. Leonard contacted the police and told them he thought the suspect's name might be Sam Bell. After giving the police that information, the police prepared a photo lineup and Mr. Leonard immediately identified appellant as the person who robbed him. Mr. Leonard also identified appellant in court as the person who robbed him.
 {¶ 9} After hearing all the evidence, the jury found appellant guilty of one count of aggravated robbery with a firearm specification. After conducting a sentencing hearing and reviewing a presentence investigation, the trial court ordered appellant serve a term of seven years on the charge of aggravated robbery, and an additional three year prison term on the gun specification. Pursuant to statute, the three year gun specification was ordered to be served consecutively to the seven year term.
 {¶ 10} It is from this judgment entry appellant prosecutes this appeal, assigning the following error for our review:
 {¶ 11} "I. THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 12} In appellant's sole assignment of error, he maintain his conviction was against the manifest weight of the evidence. Specifically, appellant asserts his identity as it relates to the aggravated robbery conviction was not adequately proven, and the operability of the firearm, as it related to the firearm specification, was, likewise, unsupported by competent, credible evidence. We disagree with each of appellant's contentions and address them in turn.
 {¶ 13} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 14} With regard to the issue of his identity, appellant maintains the fact the victim made a positive identification from a photo lineup was easily explained by the fact Mr. Leonard had just seen appellant ride by his house on a bicycle. Appellant contends this is different from Mr. Leonard's recognizing appellant from the night of the robbery. Further, appellant points out Mr. Leonard thought the robber was 6'2, viewing his assailant as taller than himself. However, appellant was only 6', i.e., the same height as Mr. Leonard. Appellant argues this indicates Mr. Leonard was clearly mistaken as to the fact appellant was the robber. We disagree with this assessment.
 {¶ 15} Mr. Leonard was present when appellant pointed a gun at him. He was also present when appellant hit him twice with the firearm. Several days later, Mr. Leonard recognized appellant as the person who had robbed him. Further, Mr. Leonard identified appellant again in a photo lineup, and on the day of trial. We find this sufficient, competent, credible evidence upon which a jury could determine the victim identified appellant as the individual who robbed him. Accordingly, this portion of appellant's assignment of error is overruled.
 {¶ 16} Next, appellant maintains there was no evidence presented as to the operability of the firearm. Again, we must disagree.
 {¶ 17} R.C. 2923.11 defines "firearm" as that term is used in the firearm specification. The definition states:
 {¶ 18} "(B)(1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 {¶ 19} "(2) When determining whether a firearm is capable of expelling or propelling
 {¶ 20} one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 21} A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. State v. Murphy (1990),49 Ohio St.3d 206. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. Id.; State v. Jenks (1991), 61 Ohio St.3d 259; and State v. Dixon (1995), 71 Ohio St.3d 608, followed; R.C. 2923.11(B)(1) and (2) (construed and applied.); State v. Thompkins (1997),78 Ohio St.3d 380, par. 1 of syllabus.
 {¶ 22} In Murphy, the Supreme Court modified State v. Gaines
(1989), 46 Ohio St.3d 65, with respect to the type of evidence required to prove a firearm specification beyond a reasonable doubt. Specifically, in Murphy, the Supreme Court held: "The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A). However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." Id. at syllabus.
 {¶ 23} In Thompkins, the "only noteworthy difference [with]Murphy * * *" was that the defendant in possession of the gun in Murphy
explicitly threatened that he would kill the store attendant. Thompkins
at 383. However, the defendant in Thompkins threatened the victim in an implicit nature by pointing the gun at the victim and telling her he was committing a "holdup" and to be "quick, quick." Id. The Supreme Court found the fact there was no explicit threat did "not take away from the fact that [the victim] thought her life was in danger." Id. The Supreme Court held "[e]ven absent any explicit verbal threats on the part of Thompkins, the trier of fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant." Id.
 {¶ 24} In State v. Dixon (1995), 71 Ohio St.3d 608, 646 N.E.2d 453, the Supreme Court analyzed the issue of the relevance of explicit versus implicit threats made by an assailant in a similar circumstance. InDixon, the defendant was charged with aggravated robbery, with a firearm specification in connection with a convenience store robbery. Therein, the victim (a store clerk) rang up a sale for a customer. When she looked up the customer said "[y]ou know what I want, open up the drawer, give me everything including the food stamps." Thompkins at FN 1. The defendant then hit the victim on the head with what she described as a gun. Id. During the course of the robbery, the defendant patted the object the victim had described as a gun, and said, "I don't want to have to use this. * * *"Id.
 {¶ 25} The court of appeals reversed the firearm conviction, finding the state had failed to prove the specification beyond a reasonable doubt. The state appealed, and the court of appeals certified the following question: "Where a defendant brandishes a gun and implicitly but not expressly threatens to use the gun as a gun, are those implicit threats sufficient to establish the operability of the gun so that the defendant can be found guilty of a firearm specification?" In reversing the judgment, the Supreme Court answered the question in the affirmative. Thompkins at 384.
 {¶ 26} Given their holdings Dixon and Murphy, supra, the Supreme Court held "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384. Finally, inThompkins, the Supreme Court noted: "Furthermore, if we were to accept the findings of the court of appeals' majority in this case, an individual who commits a holdup with a real gun could possibly avoid a firearm specification conviction simply by not saying anything and by not discharging the firearm at the time of the offense. In our judgment, such a result would eviscerate the underlying purposes of the penalty-enhancement provisions of R.C. 2923.11(B)(1) and (2)." Thompkins
at 385.
 {¶ 27} In light of the law set forth by the Supreme Court inMurphy, Dixon, and Thompkins, we find there was sufficient, competent, and credible evidence upon which a jury could conclude the gun used by appellant in the commission of the robbery was "operable." Much like the situation in Dixon, it was reasonable to conclude Mr. Leonard was in fear for his life. As in Dixon, appellant struck Mr. Leonard with gun in the head. In this way, Mr. Leonard understood the gun was a solid object. Further, the fact Mr. Leonard was in fear for his life, can be inferred from the fact that he did not grab for the gun, notwithstanding his initial instinct to do so. Accordingly, the second portion of appellant's sole assignment of error is overruled.
 {¶ 28} The November 21, 2001, and December 5, 2001 Judgment Entries of the Stark County Court of Common Pleas are affirmed.
By: Hoffman, P.J., Wise, J. and Boggins, J. concur.
topic: mwe 1. id 2. operability of gun