OPINION
{¶ 1} Defendant-appellant Richard A. Smith appeals from his conviction and sentence, following a jury trial, for Aggravated Robbery. Smith contends that the evidence in the record is insufficient to support a finding that he had a deadly weapon on or about his person at the time of his commission of a theft offense, or in fleeing afterwards, since no weapon was recovered. He also contends that the trial court erred by admitting in evidence a statement he made to a police officer at the time of his arrest.
 {¶ 2} We conclude that the victim's testimony that Smith pointed what appeared to be a handgun at the victim's head, while demanding $4,000, when the victim only owed $800, with the testimony of another witness corroborating the pointing of the apparent handgun at the victim's head, and with the recovery of at least one magazine containing live rounds from Smith after the chase immediately following the robbery, is sufficient to support a finding that a deadly weapon was on or about Smith's person during the commission of theft offense. We further conclude that Smith's general objection to the admission in evidence of a statement he made to a police officer during his arrest, without reminding the trial court that the State had agreed, at a suppression hearing, that it would not elicit this evidence, was not sufficiently specific to preserve error, and the admission of this evidence did not constitute plain error. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} The Montgomery County Sheriff's office arranged a controlled drug buy using Timiko Payton, who was then serving time on a federal drug charge, as a confidential informant. After a number of telephone conversations, Payton arranged to meet Mark Florence at a parking lot near a grocery store on Needmore Road, in Dayton, to purchase five ounces of crack cocaine for $4,000.
 {¶ 4} Detective Jeannine Whittaker, of the Sheriff's office, posed as Payton's girlfriend, and drove him to the meeting location. Whittaker parked next to Florence's car; Payton went to Florence's car and sat in the front passenger seat. Payton was wearing a body wire. Smith was sitting in the back seat of Florence's car.
 {¶ 5} Payton testified that he owed Florence $800 from drug transactions entered into before he went to prison. He testified that before any drug transaction could take place, Smith pulled a gun and pointed it at Payton's head, while Florence demanded all of the money that Payton had on his person, which was $4,000. Whittaker testified that she saw Smith pointing a gun at Payton's head.
 {¶ 6} In short order, Payton parted with his money, which was in Smith's hands, Payton got out of Florence's car, and Whittaker got out of her car and drew her own gun. A chase ensued, with Florence and Smith fleeing in Florence's car, and three Sheriff's deputies in pursuit. At some point, Florence and Smith got out of Florence's car, and began running. Sheriff's Deputy Brad Daugherty saw Smith fleeing from a wooded area, apprehended him, ordered him to the ground, and handcuffed him. Daugherty recovered a loaded magazine and $2,000 in currency from Smith. Another $1,000 was recovered from Florence's car. The final $1,000, in marked currency, was recovered from the general area in which Smith was fleeing, about a week later. No gun was ever recovered; nor were any drugs recovered. Smith and Florence admitted to police officers, in statements given after their arrests, that the purported drug transaction was just a cover story for the plan to steal money from Payton.
 {¶ 7} Smith was charged with Aggravated Robbery. He moved to suppress statements he made to police. During the suppression hearing, after it was established that Miranda warnings were given to Smith before he was questioned and gave a statement while in jail, the following colloquy ensued:
 {¶ 8} "MR. ROBINSON [representing Smith]: Your Honor, my motion was actually directed to statements made at the time of the arrest. That's all the questions I have.
 {¶ 9} "THE COURT: Are there —
 {¶ 10} "MR. SALYERS [representing the State]: I'm not even aware of any statements at the time of the arrest. But, your Honor, for the sake of simplicity I won't even use them. His confession to them is good enough for me.
 {¶ 11} "THE COURT: All right. Any — so the Government intends not to proffer any statements that may have been made from Defendant at the time of the arrest in the case in chief?
 {¶ 12} "MR. SALYERS: No."
 {¶ 13} At trial, during the direct testimony of Daugherty, who arrested Smith, the following ensued:
 {¶ 14} "Q. All right. Now, as you were patting down this defendant and finding these items, was he saying anything to you?
 {¶ 15} "A. I don't think he made any statements at that point. He did make a statement when I was walking him back to the car.
 {¶ 16} "Q. What did he say?
 {¶ 17} "A. He said that —
 {¶ 18} "MR. ROBINSON: Objection.
 {¶ 19} "THE COURT: Overruled. You may testify.
 {¶ 20} "Q. What did he say?
 {¶ 21} "A. He said that Florence had given him a thousand dollars to ride with him to Kroger's.
 {¶ 22} "Q. Okay. He didn't say why?
 {¶ 23} "A. No, he didn't say why."
 {¶ 24} Smith was convicted of Aggravated Robbery, and sentenced accordingly. From his conviction and sentence, Smith appeals.
 II {¶ 25} Smith's First Assignment of Error is as follows:
 {¶ 26} "THE EVIDENCE FAILED TO COMPLY WITH AND SATISFY THE STATUTORY REQUIREMENTS CONTAINED IN OHIO REVISED CODE SECTION2911.01, IN ORDER TO SUPPORT A GUILTY CONVICTION FOR THE CRIME OF AGGRAVATED ROBBERY."
 {¶ 27} An element of Aggravated Robbery is that the offender, "in attempting or committing a theft offense, * * *, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person * * * and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01. "Deadly weapon" is defined as: "any instrument, device or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A).
 {¶ 28} Of potential significance, R.C. 2923.11(B)(1) defines a "firearm" as a deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, specifically including an unloaded firearm, or an inoperable firearm that can readily be rendered operable. Additionally, R.C. 2923.11(B)(2) provides as follows:
 {¶ 29} "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
 {¶ 30} Smith testified, and denied that he had a gun when he went with Florence "to collect a debt." He testified that he had a gun, but left it at his mother's house, taking the loaded magazines with him, because he did not want to leave a loaded gun where his "little sister" was going to be. Smith relies, also, upon the fact that no gun was recovered from him or from the scene.
 {¶ 31} Payton testified Smith pointed a gun at his head. Whittaker, a Sheriff's deputy, corroborated this testimony. In our view, the jury could reasonably have decided to credit Payton's and Whittaker's testimony, while disbelieving Smith. The evidence discloses that Florence and Smith fled the scene in Florence's car, at night, in the middle of winter, with a foot of snow on the ground, and that while it appears that the pursuing officers never lost sight of Florence's car, there was a time when there was a substantial distance between Florence's car and the pursuers. The testimony is not clear concerning the proximity of the pursuers to Smith once the chase on foot began. We conclude that the jury could reasonably have found that a gun was used, but that it was lost or intentionally discarded during the chase, notwithstanding that it was not thereafter found.
 {¶ 32} Smith contends that there is insufficient evidence that the gun, assuming there was one, was either operable or could readily have been rendered operable. It does appear that even the implied threat represented by pointing a gun at a victim during a theft offense is not sufficient, without more, to support an inference that the gun is operable. State v. Gaines
(1989), 46 Ohio St.3d 65, 545 N.E.2d 68. This is in contradistinction to a case where there is an express threat that the victim will be shot. State v. Murphy (1990),49 Ohio St.3d 206, 551 N.E.2d 932. See, also, Sandeers v. McMackin (N.D. Ohio, 1992), 786 F.Supp. 672.
 {¶ 33} The difference between an express threat that a victim will be shot, and the implied threat represented by pointing a gun at the victim and demanding his money, is exceedingly slight. In our view, the fact that a magazine containing live bullets was recovered from Smith more than makes up for this difference. It seems unlikely that Smith would go to the trouble of carrying a magazine with live bullets if the gun he was carrying was not operable. Also of significance is the fact that this theft offense was committed in the context of a sham drug deal, between Florence and Payton, both of whom were drug dealers. Because operable firearms are frequently carried by participants in drug transactions, it would be dangerous to carry, and display, an inoperable firearm in that context. Displaying the inoperable firearm would likely make the actor a target, without affording him the opportunity to return fire. In this respect, a participant in a drug transaction, or, in this case, a pretextual drug transaction, is unlike a participant in a normal robbery, where the victim is less likely to be armed, so that use of an inoperable firearm is less likely to draw fire that cannot be returned.
 {¶ 34} In our view, Smith's possession of a magazine containing live bullets, together with the fact that this robbery occurred in the context of a pretextual drug transaction, when combined with the fact that Smith pointed a gun at Payton while he, Florence, or both of them, demanded Payton's money, is sufficient to permit a reasonable jury to infer that the gun was an operable firearm, and therefore a deadly weapon.
 {¶ 35} Although Smith makes an argument that a reasonable jury could not have found, beyond a reasonable doubt, that Smith still possessed an operable firearm during his flight, it was not necessary for the jury to so find. As we have noted, a reasonable jury could find beyond reasonable doubt, despite Smith's protestations to the contrary, that Smith had the operable firearm in his possession, and, in fact, used it, during the commission of the robbery of Payton.
 {¶ 36} Smith's First Assignment of Error is overruled.
 III {¶ 37} Smith's Second Assignment of Error is as follows:
 {¶ 38} "THE TRIAL COURT ERRED IN ALLOWING EVIDENCE TO BE PROFFERED AT TRIAL WHICH HAD PREVIOUSLY BEEN SUPPRESSED."
 {¶ 39} Although the statement Smith allegedly made to Daugherty at the time of his arrest, to the effect that Florence had paid him $1,000 to ride with him to the Kroger store, was not actually suppressed by the order of the trial court following the suppression hearing, perhaps as a result of an oversight, Smith is correct that the State had conceded, during the suppression hearing, that it would not use that statement at trial. When the State elicited that statement from Daugherty, Smith objected.
 {¶ 40} Pursuant to Evid. R. 103(A):
 {¶ 41} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 42} "(1) Objection. In case the ruling is one admitting evidence, timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context; * * *"
 {¶ 43} In objecting to the admission of his statement to Daugherty at the time of his arrest, Smith did not state the specific ground of his objection. His objection was the one word "objection." In our view, the specific ground would not have been apparent to the trial court from the context. At the suppression hearing, the State offered proof that proper warnings had been administered to Smith, pursuant to Miranda v. Arizona (1966),384 U.S. 436, when he was questioned later at the jail, and the order of the trial court following the suppression hearing simply denied the motion to suppress. The trial court may not have recalled, at the trial, that during the suppression hearing, when Smith indicated his concern about the statement he made at his arrest, the State conceded that it would not offer that testimony at trial. The trial was three months after the suppression hearing; in our view, a trial judge cannot reasonably be expected to have recalled, without being reminded of it, that one statement was the subject of a concession by the State that it would not be offered at trial. It was incumbent upon Smith to have reminded the trial court of that fact.
 {¶ 44} There was nothing about the immediate context of the statement to indicate its inadmissibility. It was a statement made by a party opponent in the presence of the testifying witness. But for the circumstance of the suppression hearing, three months earlier, it would have been admissible.
 {¶ 45} Furthermore, in our view, the admission of this one statement, while of some prejudice to Smith, since the reason he offered for having a large sum of money on his person at the time of his arrest was implausible, was not of great consequence, and did not rise to the level of plain error. Smith admitted in his later statement to police at the jail, that he and Florence had used the pretext of a drug transaction as a cover for luring Payton into a position where they could take his money. He would know, then, that he would likely be suspected of having been a participant in a drug transaction, and would be understandably anxious to persuade the arresting officer that there was an innocent explanation for the money in his possession. We conclude that the admission of Smith's statement to the officer at the time of his arrest does not so undermine confidence in the outcome of the trial as to rise to the level of plain error.
 {¶ 46} Smith's Second Assignment of Error is overruled.
 IV {¶ 47} Both of Smith's assignments of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Donovan, JJ., concur.