OPINION *Page 2 
{¶ 1} Defendant-Appellant Clinton Owens, Jr. ("Owens") appeals the May 29, 2007 Judgment Entry of Conviction and Sentencing of the Court of Common Pleas, Allen County, Ohio sentencing Owens to three years in prison for each of two counts of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), felonies of the first degree. The trial court ordered that the three year terms were to be served consecutively for a total of six years in prison.
 {¶ 2} These charges stem from two robberies occurring in January of 2007. The first robbery occurred on January 7, 2007 and began with the robbers placing a pizza order from Godfather's Pizza in Lima, OH. The robbers gave an address on the three hundred block of South McDonel in Lima, Ohio. When Nikolaos Porfyris, the delivery person, arrived at the address no one answered the door. While Porfyris was attempting to call the number on the order, three black males approached him. A woman then answered the door, spoke briefly with the males and closed the door.
 {¶ 3} After the woman closed the door, Porfyris turned to leave with the pizzas. One of the males put a gun to his forehead and ordered him to give them his money, cell phone, and the pizzas. During this time, the male with the gun tapped it on Porfyris' forehead. Porfyris was then told to leave, after which he went directly to the Lima Police Department. Porfyris described the gun as a *Page 3 
small chrome metal pistol, which he heard cock when it was placed against his head.
 {¶ 4} On January 21, 2007 Seth Sherrick experienced a similar incident. He was delivering pizza for East of Chicago Pizza in Lima and was told to deliver an order to the seven hundred block of Faurot Avenue. When he arrived at the house a woman answered the door and stated that she had not ordered a pizza. Sherrick then returned to his car. As he was opening his door, two black individuals approached and put a gun to his head. They then demanded his money and the pizzas.
 {¶ 5} After Sherrick was allowed to leave, he went to the Shawnee Township Police Department, where he was told to return to the scene as the Lima Police were already there with a suspect in custody. A neighbor had actually witnessed the robbery taking place and had called the Lima Police.
 {¶ 6} When Patrolman Frysinger arrived at the scene, footprints were found in the freshly fallen snow. Officers followed these footprints to 322½ South Metcalf Street. When officers knocked on the door a man opened it. The man who opened the door was eating pizza, and when questioned stated that somebody just brought the pizza to the house. Officers requested and were granted permission to enter the house and observed people sitting around eating East of Chicago Pizza. *Page 4 
 {¶ 7} Justin Kemper was arrested immediately based upon the officers' recognition of him and other active warrants out for his arrest. A search of Kemper's person uncovered a handgun. A ski mask was located on a nearby chair.
 {¶ 8} Sherrick later identified Kemper as one of the men who had robbed him and also identified the weapon used in the robbery. The gun that was recovered from Kemper was a silver Raven MP25 semi-automatic handgun containing two live rounds. When officers attempted to test fire the gun it would not fire. Testimony was conclusive at trial that the gun was inoperable.
 {¶ 9} Owens later became a suspect in the robbery and was taken into custody on January 23, 2007 in the residence on Metcalf When officers arrived at the residence on January 23, they were given permission to enter and asked if Owens was in the residence. Others advised that he was in the bathroom but a female then stuck her head out of the bathroom and stated she was alone. After the female emerged from the bathroom Owens was found hiding under some laundry in a bathroom closet.
 {¶ 10} After Owens was taken into custody he was questioned about his involvement in the robberies. He confessed to planning both of the robberies along with Kemper. During the January 7, 2007 incident, Owens confessed to standing next to Kemper while he robbed Porfyris. With respect to the January 21, *Page 5 
2007 robbery, Owens stated that he acted as a look out for Kemper and received part of the proceeds from the robbery. Owens also admitted to being at the house on Metcalf Street on January 21, 2007 and giving false identification information to police to avoid being arrested at that time.
 {¶ 11} On February 16, 2007 Owens was indicted on two counts of Aggravated Robbery in violation of R.C. 2911.01(A)(1). Each count contained a firearm specification as provided by R.C. 2941.145. Owens was arraigned on these charges on February 27, 2007 and entered pleas of not guilty to both counts.
 {¶ 12} A bench trial commenced on May 24, 2007, after Owens waived his right to a jury trial. The firearm specifications attached to each count were dismissed at the commencement of trial. On May 29, 2007 the trial court found Owens guilty on each count of Aggravated Robbery and proceeded directly to sentencing. Owens was sentenced to three years in prison for each of two counts of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), felonies of the first degree.
 {¶ 13} Owens now appeals asserting a single assignment of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FINDING THAT THE INOPERABLE FIREARM USED IN THIS CASE WAS CAPABLE OF INFLICTING DEATH, AND THUS ERRED IN OVERRULING THE CRIM. R. 29 MOTION *Page 6 
 {¶ 14} Here, Owens reiterates the argument raised in his Crim. R. 29 motion made at the close of testimony before the trial court, arguing that there was not sufficient evidence to prove Aggravated Robbery. More accurately, this motion was based on Owens' contention that the State had failed to prove that the gun used in the robbery satisfied the definition of a deadly weapon.
 {¶ 15} Crim.R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 16} A trial court should not grant a Crim.R. 29 motion for acquittal if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *." State v. Bridgeman (1978), 55 Ohio St.2d 261,263, 381 N.E.2d 184. However, this Court has previously held that theBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus." State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Jenks, 61 Ohio St.3d at paragraph two of the syllabus. *Page 7 
 {¶ 17} In the present case, Owens argues that the State failed to prove the elements of Aggravated Robbery beyond a reasonable doubt. R.C.2911.01 defines Aggravated Robbery:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 {¶ 18} Specifically, Owens argues that because conclusive testimony was offered at trial that the gun was inoperable, the definition of a "deadly weapon" required for Aggravated Robbery could not be satisfied. As provided by R.C. 2923.11(A) a deadly weapon is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 19} The Ohio Supreme Court has considered what must be proven to support a conviction for Aggravated Robbery through use of a deadly weapon and alternatively, what is sufficient to prove a firearm specification. The court concluded, with respect to the classification as a deadly weapon that "where the weapon used is inoperable, it may nevertheless be considered a deadly weapon *Page 8 
even though it is not a firearm." State v. Gaines (1989),46 Ohio St.3d 65, 68, 545 N.E.2d 68.
 {¶ 20} The Gaines Court specifically cited the Eighth District Court of Appeals case State v. Hicks (8th Dist. 1984),14 Ohio App.3d 25, 469 N.E.2d 992. In Hicks the court considered a case where a defendant held a toy pistol to the victim's head during a robbery. When the court specifically addressed defendant's contention that the toy pistol could not meet the definition of a deadly weapon, it held that a toy gun was a deadly weapon within the statutory definition. The court cited prior holdings that an inoperable weapon, starter gun, or pellet gun could also be considered deadly weapons. Moreover, although the court recognized that these items could be used as bludgeons, the court did not require any specific showing that a defendant committing a crime must use or threaten to use a weapon as a bludgeon in order for an inoperable gun to qualify as a deadly weapon.
 {¶ 21} This Court has also had the opportunity to address this issue in State v. McDuffie, 3rd Dist. No. 9-2000-92, 2001-Ohio-2217. In McDuffie, we found that counsel was not ineffective for failing to challenge the classification of a pellet gun as a deadly weapon. This Court recognized, as the Hicks and Gaines courts did, that a pellet gun was capable of inflicting death and that consequently, even a toy gun could be capable of inflicting death if used as a bludgeon.Id. *Page 9 
 {¶ 22} Other Courts of Appeals have reached similar conclusions. InState v. Holmes, 6th Dist. No. L-01-1459, 2002-Ohio-6185, the Sixth District Court of Appeals found that an inoperable hand gun used in the commission of the robbery of a pizza restaurant met the definition of deadly weapon and at minimum could also have been used as a bludgeon. The Court did not require any threats or indication that the weapon was intended to be used as a bludgeon. See also State v.Bonner (1st Dist. 1997), 118 Ohio App.3d 815,694 N.E.2d 125; State v. Appleman (Feb. 5, 1993), 5th Dist. No. CA-92-8.[1]
 {¶ 23} Based on the foregoing we find that the inoperable gun used in the robberies of the two pizza delivery persons qualified as a deadly weapon. Therefore, we find that a rational trier of fact could have found all of the elements of Aggravated Robbery beyond a reasonable doubt. Owens' sole assignment of error is overruled.
 {¶ 24} Accordingly, the Judgment Entry of Conviction and Sentencing of the Court of Common Pleas, Allen County, Ohio sentencing Owens to three years *Page 10 
in prison for each of two counts of Aggravated Robbery, in violation of R.C. 2911.01(A)(1), felonies of the first degree, is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] This Court recognizes that the Second District Court of Appeals had declined to classify an inoperable weapon as a deadly weapon unless evidence was specifically adduced at trial that the gun was intended or threatened to be used as a bludgeon. See State v. Macias, 2nd Dist. No. 1526, 2003-Ohio-1565. Macias is based on the holding of State v. Nelson, where the Court misconstrues the reasoning articulated in Gaines to state that only if an inoperable firearm is actually used or intended to be used as a bludgeon can it meet the definition of a deadly weapon. (August 18, 1995), 2nd Dist. 14775. *Page 1