OPINION.
{¶ 1} Appellant, Curt Kovacic, was convicted in the Ashtabula County Court of Common Pleas of aggravated robbery with a firearm specification. Appellant now appeals from his conviction on the firearm specification arguing the state failed to present sufficient evidence to sustain his conviction.
 {¶ 2} On March 6, 2001, appellant entered the Duke and Duchess mini-mart on Lake Avenue in Ashtabula at approximately 2:40 a.m. Appellant asked the clerk, Tammy Hemphill, for a pack of cigarettes. After Hemphill gave him the cigarettes, appellant told Hemphill to give him the money from the cash register. At first, Hemphill refused but appellant stated he had a gun. Appellant's hand was in the right pocket of his sweat jacket such that Hemphill believed he had a gun. Hemphill cooperated and appellant absconded with the money. After appellant's departure, Hemphill activated the alarm and officers of the Ashtabula City Police Department arrived about ten minutes later. Ultimately, Hemphill identified appellant as the individual who robbed the store both via a photographic line-up and in court.
 {¶ 3} On February 21, 2002, a jury convicted appellant on one count of aggravated robbery and a firearm specification. The trial court sentenced appellant to four years for the aggravated robbery charge and a consecutive three-year term for the firearm specification.
 {¶ 4} Appellant assigns the following error for review:
 {¶ 5} "The verdict was supported by insufficient evidence as to the specification that the appellant had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 6} In his sole assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction on the firearm specification. To this end, appellant maintains the state failed to prove all essential elements of a firearm specification beyond a reasonable doubt. In particular, appellant contends the state failed to demonstrate that he had an operable firearm, on or about his person or under his control, while committing the aggravated robbery.
 {¶ 7} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386. A challenge based upon the sufficiency of the evidence is essentially a test of adequacy. Whether the evidence is sufficient to sustain a verdict is a question of law. Id., citing State v. Robinson
(1955), 162 Ohio St. 486. Furthermore, a conviction grounded on insufficient evidence constitutes a denial of due process. Tibbs v.Florida (1982), 457 U.S. 31, 45.
 {¶ 8} R.C. 2941.145 establishes the necessary requirements to prove a firearm specification. R.C. 2941.145(A) reads, in pertinent part:
 {¶ 9} "Imposition of a three-year mandatory prison term * * * is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. * * *"
 {¶ 10} Moreover, R.C. 2923.11(B)(1) defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
 {¶ 11} From the preceding statutory language, it is patent that a threshold requirement for charging a firearm specification is the existence of a firearm on or about the offender's person or under his control. As such, possession of a firearm, as defined by R.C.2923.11(B)(1), is sine qua non for a conviction under R.C. 2941.145(A). In order to establish that a weapon is a firearm under R.C. 2923.11(B)(1), the state is required to establish (1) that the weapon is capable of expelling or propelling projectiles by the action of an explosive propellant and (2) the firearm's operability. As such, absent evidence establishing that a weapon propels objects via a combustible propellant and the firearm in question is operable, a firearm specification cannot be proved beyond a reasonable doubt. See State v. Gaines (1989),46 Ohio St.3d 65, at syllabus.
 {¶ 12} The Supreme Court of Ohio has provided definition as to what kind of evidence is required to prove a firearm specification beyond a reasonable doubt.
 {¶ 13} In Gaines, the Supreme Court of Ohio established that "evidence adduced relative to the character of the weapon used is not sufficient to warrant a conviction under the firearm specification." Id. at 69. The Court indicated that the state need not admit the firearm in question into evidence to establish the specification, but may establish its existence via circumstantial evidence, e.g., testimony as to gunshots, smell of gunpowder, bullets, or bullet holes. Id. Irrespective of the weapons existence, however, "there must be some evidence relative to the gun's operability." Id. In Gaines, the state presented testimony concerning the appearance of the gun and the witnesses' subjective belief that it was operable. However, the court held that the lay witnesses could have drawn the same conclusion from the presence of a toy gun. Therefore, absent any evidence that the gun was operable, the firearm specification was not proved beyond a reasonable doubt.
 {¶ 14} In State v. Murphy (1990), 49 Ohio St.3d 206, the Supreme Court of Ohio revisited the issue addressed in Gaines. In doing so, it modified Gaines by further delineating the manner in which the state may prove a firearm specification. In Murphy, the offender entered a dairy store and announced he was robbing it. He then removed a T-shirt from the inside of his pants, unwrapped it, removed a gun, and pointed the gun at the store's clerk and a customer. The offender waived the gun back and forth while announcing that if the clerk failed to give him money, he would kill him. The witnesses described the gun as a one or two shot derringer. From these facts the court upheld the offender's conviction on aggravated robbery charges with a firearm specification. In so doing, the court held that proof of operability can be established beyond a reasonable doubt by testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime.Murphy, supra, at syllabus.
 {¶ 15} Finally, in State v. Thompkins (1997) 78 Ohio St.3d 380, the Supreme Court of Ohio once again discussed the foregoing issue, again modifying the manner by which the state may prove a firearm specification. In Thompkins, the offender had a gun pointed directly at a store clerk. The offender advised the clerk that he was committing a "holdup" and to be "quick, quick ". The first district court of appeals reversed the trial court's conviction on the firearm specification, reasoning none of the recognized indicia of firearm operability were demonstrated, viz., an actual gun, bullets, the smell of gunpowder, bullet holes or verbal threats by the robber that he would shoot the victim. The Supreme Court reversed the First District, holding:
 {¶ 16} "In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. Id. at 385.
 {¶ 17} In light of these guiding principles, we believe that the state failed to present sufficient evidence to sustain appellant's conviction on the firearm specification as a matter of law. In the current case, the state presented evidence that appellant entered the mini-mart and ordered cigarettes. When the clerk retrieved the cigarettes, appellant told her to give him the money in the register. When the clerk declined, appellant stated he had a gun. The record indicates that, during the robbery, appellant kept his hand in his right pocket of his jacket.
 {¶ 18} To determine whether the evidence was adequate to sustain the conviction on the firearm specification, we must examine whether appellant had a firearm on his person and whether the weapon was operable. Pursuant to Thompkins, the state was entitled to use circumstantial evidence to prove the firearm penalty-enhancement specification. However, from the evidence adduced at trial, we cannot logically conclude that appellant had a "firearm" on his person or under his control. To wit, as a matter of verbal taxonomy, a "firearm" pursuant to R.C. 2923.11(B)(1) is a form of gun. However, not all guns are "firearms". For instance, a toy water pistol can be generically defined as a gun. However, such an instrument is assuredly not a "firearm" under R.C. 2923.11(B)(1). That said, appellant's general conduct and allusion to the weapon he possessed does not necessarily imply he had a firearm on his person during the robbery.
 {¶ 19} Moreover, the state maintains that we can infer that appellant had a firearm by virtue of his statement that he "had a gun." However, by relying upon such a construction, the state is, at a basic level, assuming what it needs to prove, viz., that appellant had an operable firearm, or one which could readily be rendered operable, capable of propelling projectiles by the action of a combustible propellant. The state did not present any evidence to this effect. At most, the state demonstrated, via appellant's statement and conduct, that appellant had a gun. However, a statement by a defendant that he has a gun, without more, does not transform the so-called gun into a "firearm" for purposes of R.C. 2923.11 or 2941.125. To allow this conceptual morph would reduce the burden on the prosecution and thereby fracture appellant's due process rights.
 {¶ 20} Further, if we infer that the appellant possessed a firearm simply because he said he had a gun, then we must infer operability of the firearm from this inference. However, to do so would require us to pile an inductively weak inference upon an even weaker inference. Such is an exercise in undue speculation. By law, the state must prove every element of an offense beyond a reasonable doubt, i.e. "proof of such a character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs." R.C. 2910.05(D). By virtue of appellant's indication that he had a gun, the state proved, beyond a reasonable doubt, that appellant committed aggravated robbery rather than merely theft. However, the state's evidence was insufficient to meet the heightened standard for the firearm specification because it never established that appellant was in actual possession of a firearm as defined by R.C. 2923.11(B)(1). As such, in our view, the state failed to present sufficient evidence to prove the firearm specification pursuant to R.C. 2941.145.
 {¶ 21} However, assuming arguendo, that appellant's statement and conduct were sufficient to establish, circumstantially, that appellant had a weapon within the purview of R.C. 2923.11(B), his blank declaration that he had a gun, without a greater indicia of evidence, is insufficient to prove operability. To wit, under the totality of the circumstances, the clerk never saw[1] a gun nor any bullets and did not smell gunpowder; moreover, there is no evidence that appellant's statements or actions could be interpreted as explicit threats.
 {¶ 22} These findings notwithstanding, we must still address whether appellant's statement and actions were implicitly threatening such that operability could be inferred from the circumstances. SeeThompkins, supra. To this issue, we conclude, as a matter of law and logic, that appellant's actions did not amount to an implicit threat insofar as appellant's declaration did not necessarily portend danger or express a desire to inflict injury on the clerk. Although appellant's hand was in his pocket and he indicated he had a gun, we cannot tacitly infer, from the surrounding circumstances, that he had an operable firearm.
 {¶ 23} To summarize, the state is obligated to prove every element of an offense beyond a reasonable doubt. The firearm specification statute enacted by the Ohio legislature defines a "firearm" in terms of operability. Thus, operability is an essential element of the offense. To meet its burden, the state may utilize and rely upon circumstantial evidence, e.g. all relevant facts and circumstances which might include an implicit threat. In the current matter, appellant, after demanding money from the clerk declared he had a gun. Although this may be sufficient circumstantial evidence of appellant's possession of a weapon, it does not imply he possessed a firearm. Moreover, even if we understood appellant's statement to mean he had a weapon that might fit within R.C. 2923.11(B)(1), the statement does not, as a matter of law, imply that the weapon was an operable firearm. Hence, the state failed to meet its burden of proof with respect to the firearm specification conviction and consequently, appellant's sole assignment of error has merit. Therefore, in accord with the foregoing opinion, the judgment of the Ashtabula County Court of Common Pleas is reversed, and the matter remanded for procedures consistent with this opinion.
WILLIAM M. O'NEILL, J., concurs.
DIANE V. GRENDELL, J., dissents with dissenting opinion.
[1] We must note that seeing a firearm is not a necessary condition for a firearm specification; however, the sight of a purported gun is a factor to be weighed under the totality of the circumstances when deciding whether a firearm specification should attach.