[Cite as *State v. Tyler*, 2013-Ohio-3393.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0041** |
| ASHLEY L. TYLER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2011 CR 0362.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Leonard J. Breiding, II*, 4825 Almond Way, Ravenna, OH 44266 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Ashley L. Tyler, appeals her conviction, after a bench trial, on one count of aggravated robbery with a firearm specification and one count of carrying a concealed weapon. Appellant argues the evidence adduced at trial was insufficient to sustain a finding of guilt on aggravated robbery with a firearm specification such that her motion for directed verdict of acquittal should have been granted. Appellant additionally argues the judgment of guilt on aggravated robbery with a firearm specification is

against the manifest weight of the evidence, and the trial court erred in imposing her sentence on that count. Appellant does not argue any error regarding her conviction for carrying a concealed weapon. For the following reasons, we affirm.

{¶2} At trial, the victim, Sheetim Masahu, testified he owns a pizza shop, LeDion's Pizza, in Kent, Ohio. On May 26, 2011, the pizza shop received a telephone call ordering two pizzas and 50 wings. The driver at the pizza shop twice attempted delivery of the items, to no avail. Deciding to again attempt to deliver the order, Mr. Masahu drove to 914 Carlisle, Apartment 101. When he arrived at the location, he pressed the call button for Apartment 101, but no one answered. As he walked outside, he heard a voice state, "Hold it right there, dude." As he turned around he observed a heavyset individual, dressed in black, pointing a black gun at him; he described the gun "as a small, black handgun and possibly a glock." The gun was described as an automatic, not a revolver, with a clip protruding from the handle. The individual was standing approximately 15 feet from Mr. Masahu. At this point, Mr. Masahu dropped the pizza and wings, kicked off his flip-flops, and began running in a zig-zag pattern to avoid potentially being shot. After reaching a parked vehicle, he ducked down and called 911.

{¶3} When emergency personnel arrived, they began searching for an individual that matched Mr. Masahu's description. Officer Martin Gilliland of the City of Kent Police Department testified that he and his canine started to track a scent which led to the same apartment building. At this time, Patrolman Poe, also of the City of Kent Police Department, radioed to indicate that he observed a woman matching the suspect's description. As Patrolman Poe was approaching the back entrance of the apartment building, he heard a female's voice from the ground floor apartment. In

2

addition, Officer Gilliland testified that he smelled the odor of buffalo wings coming from this ground floor apartment.

{¶4}    At this point, Officer David Marino, who was located inside the building in the laundry room, observed appellant exiting Apartment 103. Appellant was wearing a dark, heavy coat. As she matched the victim's description of the suspect, Officer Marino brought appellant into the laundry room where she was patted down. The officers found brass knuckles and a can of mace on appellant's person. Upon questioning, appellant seemed nervous and was sweating.

{¶5}    The victim positively identified appellant at the crime scene.

{¶6}    At trial, appellant testified and admitted that she was involved in the scheme to rob Mr. Masahu. Appellant, however, testified that she did not carry or use a firearm during the robbery. Instead, appellant maintains that she carried a black broom handle "making it seem like she had a gun." Appellant stated that after the robbery, she threw the broom handle in the woods near the apartment building. Neither the firearm nor the broom handle were recovered from the officers' search of the crime scene.

{¶7}    Appellant was found guilty of the crimes charged. She was sentenced to five years on the aggravated robbery charge and three years for the firearm specification for a total of eight years. Appellant was also sentenced to 180 days in the Portage County Jail on the charge of carrying a concealed weapon which ran concurrently to the aforementioned sentence.

{¶8}    Appellant appealed, and as her first assignment of error, she alleges:

{¶9}    "The trial court erred in sentencing the appellant by imposing more than the minimum sentence and by imposing an improper sentence."

3

{¶10} Under this assigned error, appellant argues the trial court erred in imposing five years in prison for aggravated robbery and a consecutive term of three years in prison for the firearm specification.

{¶11} In *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, the Ohio Supreme Court established a two-step analysis for an appellate court reviewing a felony sentence. In the first step, we consider whether the trial court "adhered to all applicable rules and statutes in imposing the sentence." *Id.* at ¶25. "As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." *Id.*

{¶12} As the Ninth Appellate District observed:

{¶13} "*Kalish* did not specifically provide guidance as to the 'laws and rules' an appellate court must consider to ensure the sentence clearly and convincingly conforms with Ohio law. The specific mandate of *Kalish* is that the sentence fall within the statutory range for the felony of which a defendant is convicted." *State v. Gooden*, 9th Dist. No. 24896, 2010-Ohio-1961, ¶48, citing *Kalish* at ¶15.

{¶14} Next, if the first step is satisfied, we consider whether, in selecting the actual term of imprisonment within the permissible statutory range, the trial court abused its discretion. *Kalish*, *supra*, ¶26. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶15} Addressing the first step of the *Kalish* test, appellant was convicted of one count of aggravated robbery, a felony of the first degree, in violation of R.C.

4

2911.01(A)(1).  This count carried a firearm specification pursuant to R.C. 2929.14(D) and 2941.145.  The trial court's sentence of a mandatory three-year term for the firearm specification is the mandatory term of imprisonment pursuant to R.C. 2941.145.  Further, appellant's five-year term of imprisonment for the offense of aggravated robbery is within the statutory range.  *See* former R.C. 2929.14(A)(1) (for a felony of the first degree, appellant was subject to a prison term of three, four, five, six, seven, eight, nine, or ten years).  Appellant's sentence was therefore within the statutory range for these offenses and did not run afoul of sentencing laws existing at the time of her sentencing.

{¶16}  We next address the second step of *Kalish*: whether the sentence selected by the trial court was an abuse of discretion.  Appellant maintains her sentence must be overturned because the trial court did not make findings under R.C. 2929.11 and R.C. 2929.12.  We find this argument to be without merit.

{¶17}  While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)'"  *State v. Webb*, 11th Dist. No. 2003-L-078, 2004-Ohio-4198, ¶10, quoting *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000-Ohio-302.  In *State v. Greitzer*, 11th Dist. No. 2006-P-0090, 2007-Ohio-6721, ¶28, this court acknowledged its adoption of the pronouncement of the Ohio Supreme Court in *State v. Adams*, 37 Ohio St.3d 295 (1988).  The Ohio Supreme Court in *Adams* held: "[a] silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12."  *Adams*, *supra*, paragraph three of the syllabus.  Moreover, in *State v. Cyrus*, 63 Ohio

5

St.3d 164 (1992), the Ohio Supreme Court held that the burden is on the defendant to present evidence to rebut the presumption that the court considered the sentencing criteria. *Id.* at 166.

{¶18} On appeal, appellant did not meet her burden in demonstrating the trial court's failure to consider the factors in R.C. 2929.11 and R.C. 2929.12. R.C. 2929.12 provides a list of factors that the trial court "shall consider" when imposing a felony sentence. While the trial court is required to consider the R.C. 2929.12 factors, "the court is not required to 'use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors (of R.C. 2929.12.)'" *Webb*, 2004-Ohio-4198, ¶10, quoting *Arnett*, 88 Ohio St.3d at 215.

{¶19} The sentencing entry indicates the trial court "considered the purpose of felony sentencing" and "considered the need for incapacitating the Defendant, deterring the [D]efendant and others from future crimes, rehabilitating the Defendant, making restitution to the victim of the offense, the public or both."

{¶20} We find no abuse by the trial court in imposing appellant's sentence. Thus, appellant's first assignment of error is without merit.

{¶21} As her second assignment of error, appellant alleges that her "conviction of aggravated robbery with a firearm specification was contrary to the manifest weight of the evidence."

{¶22} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine "whether the jury

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

**{¶23}** Appellant argues there is conflicting testimony regarding Mr. Masahu's description of appellant versus the clothing she was wearing at the time of her arrest. First, we note that appellant admitted to robbing Mr. Masahu at trial.

**{¶24}** Nevertheless, during his testimony, Mr. Masahu described the assailant as a heavyset person, dressed in black. Appellant admitted that he was unable to discern whether the assailant was a female or male, but that he was able to look at the individual for three to four seconds before he began to run. When the officers arrived, Mr. Masahu described the assailant as "a black female, 18 to 20 years old, heavyset, short hair, wearing all dark clothing."

**{¶25}** After observing appellant exiting Apartment 103 and noticing that she matched Mr. Masahu's description, appellant was searched and questioned. Officer Poe described appellant as a "female that looked like a male" in dark clothing. Further, appellant was sweating profusely and donning a dark, heavy jacket which was unusual for the mild May weather.

**{¶26}** Without citing to any testimony, appellant also argues it is clear that appellant did not have a gun on or about her person during the robbery. Although appellant testified that she carried a black broom handle, Mr. Masahu testified that appellant pointed a gun directly at him, that he was able to observe both the barrel and clip of the weapon, and that he was "one hundred percent sure that it was a gun." This court is mindful that in weighing the evidence submitted at a criminal trial, an appellate

7

court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 (1967), paragraph one of the syllabus.

{¶27} After reviewing the record, we cannot say that the trier of fact clearly lost its way or that any miscarriage of justice resulted. Consequently, we cannot say that appellant's convictions are against the manifest weight of the evidence. Appellant's second assignment of error is without merit.

{¶28} As her third assignment of error, appellant maintains:

{¶29} "The trial court erred in failing to grant appellant's Criminal Rule 29 motion to dismiss the aggravated robbery charges with a fireman specification at the conclusion of the state's case and at the conclusion of the evidence."

{¶30} An appellate court reviewing the sufficiency of the evidence examines the evidence admitted at trial and determines whether, after viewing the evidence in a light most favorable to the state, the jury could have found all elements of the crime proven beyond a reasonable doubt. *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13 (Dec. 23, 1994); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390, (Cook, J., concurring). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*

{¶31} In her assigned error, appellant argues that the state failed to prove that she "had a weapon on her person."

{¶32} Appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1), which states:

{¶33} No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

{¶34} First, we evaluate whether the evidence was sufficient to convict appellant of aggravated robbery. "Deadly weapon" is defined as any device capable of causing death, which is either designed or specially adapted for use as a weapon. For the reasons to follow, we conclude that the conviction survives both a sufficiency and manifest weight challenge as the evidence supports a conclusion that appellant possessed a firearm.

{¶35} Second, appellant's aggravated robbery charge carried a firearm specification. Pursuant to R.C. 2929.14(D)(1)(a)(ii) and R.C. 2941.145, a court shall impose a mandatory three-year prison term on an offender who (1) is convicted or pleads guilty to aggravated robbery, and (2) is shown to have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶36} R.C. 2923.11(B) defines firearm and provides:

9

**{¶37}** 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

**{¶38}** When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representation and actions of the individual exercising control over the firearm.

**{¶39}** In *State v. Haas*, 11th Dist. No. 2009-P-0068, 2010-Ohio-6249, ¶42, this court, in discussing whether the state met its burden of proof as to the appellant's firearm specification, stated:

Laboratory testing results are not the only admissible evidence that can be considered in determining whether or not a firearm was operable. Proof of operability may also be established by circumstantial evidence, which may include the actions of the individual with control over the firearm. Also, a trial court evaluates the evidence of a firearm's operability by examining the totality of the circumstances. The State need not introduce empirical evidence that the gun is operable; rather, it may establish operability through the testimony of lay witnesses who had an opportunity to observe the weapon and the surrounding

circumstances. Furthermore, under R.C. 2923.11(B)(2), in determining whether or not a firearm is operable, the trier of fact may rely upon circumstantial evidence, including the representations and actions of the individual exercising control over the firearm. *Hass*, *supra*, citing *State v. Cook*, 10th Dist. Nos. 09AP-316 & 09AP-317, 2010-Ohio-2726, ¶60.

See also *State v. Ealom*, 8th Dist. No. 94127, 2011-Ohio-70, ¶16 ("[a] victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and exploit that believe for his own criminal purposes, is sufficient to prove a firearm specification"). Additionally, the Ohio Supreme Court has held "proof of the operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of the firearm by the defendant and the implicit threat to shoot it." *Thompkins, supra.*

**{¶40}** Appellant maintains that a gun was not recovered at the crime scene; however, we find this argument unpersuasive. *See State v. Murphy*, 49 Ohio St.3d 206 (1990) (noting that it is not necessary to admit the firearm used during a crime into evidence in order to establish a firearm specification.)

**{¶41}** With respect to operability, the trier-of-fact heard Mr. Masahu's testimony that he was very scared and afraid that appellant would shoot him. Mr. Masahu testified that he clearly observed the gun when it was pointed toward his face; he noted that it was black, that it was not a revolver, and that he observed the barrel and clip. At the time of the incident, Mr. Masahu described the gun as a small, black handgun. Moreover, when faced with the situation, Mr. Masahu kicked off his flip-flops to

11

maximize his rate of retreat and ran in a zig-zag manner to avoid being shot. Obviously, he viewed appellant's actions as an implicit threat and based on the evidence, reasonably so.

{¶42} Ordering the victim to hold it right there while pointing a gun at him satisfies the proof requirements stated in *Thompkins* as it constitutes both brandishing and an implicit threat. Pointing the gun says all one needs to know regarding the implicit threat component; as this satisfies the proof requirements that have been decided by a higher court, we are bound to follow the holding in *Thompkins, supra*.

{¶43} After viewing the evidence in a light most favorable to the state, this court concludes that the evidence was sufficient and the convictions are not against the manifest weight of the evidence.

{¶44} Appellant's third assignment of error is without merit.

{¶45} The judgment of the Portage County Court of Common Pleas is hereby affirmed.


DIANE V. GRENDELL, J., concurs,

CYNTHIA WESTCOTT RICE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

{¶46} While I agree with the majority that the state produced sufficient credible evidence to support appellant's conviction for aggravated robbery and the trial court did

12

not err in imposing sentence for that crime, I would hold there was insufficient evidence to support the firearm specification. I therefore respectfully dissent from the majority opinion.

**{¶47}** As the majority points out, to meet its burden under R.C. 2923.11(B)(1), the state must establish (1) that the weapon is capable of expelling or propelling projectiles by the action of an explosive propellant and (2) the firearm's operability. In determining whether a "firearm" was displayed, brandished, possessed, or used in committing the underlying crime, "the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." *State v. Thompkins*, 78 Ohio St.3d 380, 385 (1997).

**{¶48}** To meet its burden of production, the state introduced evidence that appellant had "a small, black handgun." According to Mr. Masahu, the "gun" was "possibly an eight millimeter." Not all guns are firearms; and, while an eight millimeter handgun is a weapon "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," given Mr. Masahu's lack of certitude, one cannot conclude, beyond a reasonable doubt, the purported gun was, in actuality, an eight millimeter. In this regard, the evidence on this element is, at best, tenuous and, in my view, militates strongly against a finding of guilt beyond a reasonable doubt. This conclusion, however, is one of weight, not sufficiency.

**{¶49}** Even assuming the evidence was strong enough to establish the weapon was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," I would hold the state failed to establish its operability.

13

{¶50} In *State v. Kovacic*, 11th Dist. No. 2002-A-0032, 2003-Ohio-5219, this court reversed and vacated a conviction on a firearm specification for the state's failure to produce sufficient evidence of operability. In that case, the defendant held up a convenient store demanding money. When the clerk refused, the defendant, with his hand in the right pocket of his sweater jacket, stated he had a gun. A jury convicted the defendant of aggravated robbery with a firearm specification. In finding the state failed to produce sufficient evidence on the firearm specification, this court observed that, while the state proved the defendant possessed a weapon, it failed to prove he was in possession of a firearm as defined by R.C. 2923.11(B)(1). This court underscored that the defendant's actions and statement did not, "as a matter of law and logic" amount to an implicit threat "insofar as appellant's declaration did not necessarily portend danger or express a desire to inflict injury on the clerk." *Kovacic*, *supra,* at ¶20. In reversing the conviction on the specification, this court summarized:

{¶51} [T]he state is obligated to prove every element of an offense beyond a reasonable doubt. The firearm specification statute enacted by the Ohio legislature defines a "firearm" in terms of operability. Thus, operability is an essential element of the offense. To meet its burden, the state may utilize and rely upon circumstantial evidence, e.g., all relevant facts and circumstances which might include an implicit threat. In the current matter, appellant, after demanding money from the clerk declared he had a gun. Although this may be sufficient circumstantial evidence of appellant's possession of a weapon, it does not imply he

14

possessed a firearm.  Moreover, even if we understood appellant's statement to mean he had a weapon that might fit within R.C. 2923.11(B)(1), the statement does not, as a matter of law, imply that the weapon was an operable firearm.  *Kovacic, supra*, at ¶23.

{¶52}  In this case, appellant had an apparent gun pointed at Mr. Masahu and instructed him to "hold it right there."  Even though the weapon was pointed at the victim, appellant's statement to "hold it right there" was an instruction for Mr. Masahu to cease what he was doing.  Such a statement does not necessarily imply appellant possessed a desire or intention to inflict injury on Mr. Masahu.  In other words, appellant's statement, in my opinion, does not rise to the level of an implicit threat to shoot the weapon such that an inference of operability could be drawn.  In fact, instead of complying, Mr. Masahu ran away with no further action from appellant.  In this regard, the facts of this case are different from other cases where courts have found implicit threats adequate to establish operability.

{¶53}  For instance, in *Thompkins*, the leading case in this area, the defendant pointed a gun at a store clerk, advised the clerk he was committing a hold up, and to be "quick, quick."  After the clerk surrendered approximately $800, the defendant advised the clerk not to call the police for ten minutes.  The Supreme Court determined that the defendant's gestures and statements were implicit threats that he would discharge the weapon if the clerk did not comply.  The Court therefore concluded the relevant circumstances, taken together, were sufficient to establish the weapon's operability.

{¶54} Unlike the circumstances of *Thompkins*, there is no evidence that appellant was acting with a sense of urgency or in a manner that would indicate she

15

would shoot Mr. Masahu when the crime was committed. That appellant made no further statements as Mr. Masahu fled, without complying with her initial advisement, further supports this observation. I therefore maintain appellant's statements and gestures, taken together with the remaining circumstances, were not, in my view, implicit threats to discharge a weapon.

{¶55} The Ohio Supreme Court has noted that "in enacting (former) R.C. 2929.71, [now codified under R.C. 2929.14,] the General Assembly intended to send a message to the criminal world: 'If you use a firearm you will get an extra three years of incarceration.'" *Thompkins*, supra, 385 (Citation omitted.). The sentencing enhancement under R.C. 2929.14, like the firearm enhancement in the federal sentencing-guidelines, "accounts for the risk of harm resulting from the manner in which the crime is carried out, for which the defendant is responsible." *Dean v. United States*, 556 U.S. 568, 576 (2009). The severity of the mandatory penalty enhancement is consequently a function of the additional hazards that accompany the commission or attempted commission of a crime with an operable or readily operable firearm.

{¶56} I acknowledge that the Supreme Court has determined that an implicit threat is enough to prove a firearm is operable or can be readily rendered operable. While I see a logical disconnect in equating implicitly threatening conduct with the capacity of a firearm to discharge a projectile with a combustible propellant, it is not my station to question the Court's wisdom on its rulings or the policies and/or beliefs that animate those determinations. Still, if, as the Supreme Court has held, an implicit threat is sufficient to prove operability, a material element of a firearm specification, then justice demands that the threat provide some non-speculative indicia of the defendant's

16

then-present intent to act on that threat.  Unless the state can meet this requirement, the state's burden of production is necessarily reduced and a defendant's due process rights fractured.  *Kovacic*, *supra*, at ¶19.  Here, appellant's simple admonishment that Mr. Masahu essentially "stay put" does not, in my view, prove her weapon was an operable firearm justifying the three-year mandatory enhancement.

{¶57}  I therefore maintain the state failed to submit "proof of such a character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs" on the elements of the firearm specification.  I accordingly dissent on this issue.